## DICKERSON v. COLGROVE.

A., the owner in fee of lands in Michigan, died in February, 1853, leaving his two children B. and C. his only heirs-at-law. On March 3, C. and her husband conveyed the lands by warranty deed to D., who put it upon record March 6, 1854, and entered into possession of them April 1 of that year. D. learning of the existence of B., and that he lived in California, wrote to him, inquiring whether he made any claim to the premises. On April 1, 1856, the latter addressed from California to his sister C., in Michigan, a letter, wherein he said, "You can tell D. for me he need not fear any thing from me. . . . You can claim all there. This letter will be enough for him. I intended to give you and yours all my property there, and more if you need it." The contents of that letter becoming known to D., he, for a valuable consideration and by deeds with covenants of warranty, conveyed in fee the lands to E. and others, who thereunder have ever since occupied and improved them. July 9, 1865, B. conveyed the undivided half of them by quitclaim deed to F., who, March 6, 1873, brought ejectment. *Held,* 1. That B.'s letter of April 1, 1856, operates as an estoppel *in pais* which precludes him from setting up a claim to them, and is an available defence to the action. 2. That F. was not a *bona fide* purchaser, and that whatever title he acquired was subject to the legal and equitable rights of D. and those claiming under the latter.

ERROR to the Circuit Court of the United States for the Western District of Michigan.

The facts are stated in the opinion of the court.

*Mr. George W. Lawton* for the plaintiff in error.

*Mr. M. J. Smiley, contra.*

MR. JUSTICE SWAYNE delivered the opinion of the court.

This is an action of ejectment brought by Dickerson and Wheeler. The latter died during the progress of the suit. The parties agreed in writing to submit the case to the court without the intervention of a jury. The court found the facts. So far as it is necessary to state them, they may be thus summarized: Micajah Chauncey owned the land in controversy. He died on the —— day of February, 1853, leaving two children,

Edmund Chauncey and Sarah Kline.   They were his only heirs-at-law.   He is the common source of title of all the parties in this litigation.   On the 3d of March, 1853, John Kline and Sarah his wife conveyed by warranty deed the entire premises to Lowell Morton.   The deed was duly recorded on the 6th of March, 1854, and on the 1st of April, 1854, Lowell Morton entered into possession of the premises.   He and the defendants have ever since been in actual possession, claiming to own and hold the property as tenants in common.   The latter were in possession at the commencement of this suit, claiming title through conveyances from Lowell Morton.   Prior to the 1st of April, 1856, Lowell Morton learned that Edmund Chauncey was one of the children of Micajah Chauncey, and that he lived in California.   Whereupon Lowell Morton procured Eleazer Morton to write to Edmund Chauncey to learn whether he made any claim to the premises.   On the 1st of April, 1856, Edmund Chauncey, still living in California, addressed a letter to his sister, Sarah Kline, then living in Michigan, wherein he disavowed, in strong terms, the intention ever to assert such a claim.

The contents of this letter subsequently came to the knowledge of Lowell Morton, who thereafter conveyed to the defendants by warranty deeds.   Under these deeds they have since held and claimed title, and have occupied and improved the property.   On the 9th of July, 1865, Edmund Chauncey conveyed the undivided half of the premises, by quitclaim deed, to Orlando B. Dickerson and James Witherell.   On the 1st of May, 1868, Witherell conveyed all his right, title, and interest to William W. Wheeler, one of the original plaintiffs.   The suit was instituted on the 6th of March, 1873.   Lowell Morton and the defendants had then been in possession eighteen years and eleven months.   The court below held as conclusions of law that the action was barred by the Statute of Limitations of Michigan of 1863, and by an estoppel *in pais*, and gave judgment accordingly.   The plaintiff thereupon sued out this writ of error.

Both the conclusions of law are relied upon as errors for the reversal of the judgment.   Our remarks will be confined to the point of estoppel.

This defence is founded upon the letter of Edmund Chauncey. The contents of the letter of Morton, to which it refers, are not given in the finding of facts, but the subject of that letter and the inquiry which it made appear clearly in the letter of Chauncey. He said: "Mr. Morton wrote me a letter. He wanted to know if I intended to claim any of the Conger farm" (meaning the premises in controversy). "You can tell Mr. Morton for me, he need not fear any thing from me. Thank God, I am well off here, and you can claim all there. This letter will be enough for him. I intended to give you and yours all my property there, and more if you need it." The phrase, "I intended to give," &c., implies that he knew his half of the farm had already been sold to Morton, and that he could not, therefore, give his sister, to whom the letter was addressed, any part of that property. It does not appear that there was any other property held by them as coparceners. He says further, that he intended to give her more if she needed it. All this was communicated to Lowell Morton. What was the effect upon him? He was lulled into security. He took no measures to perfect his title, nor to procure any redress from the Klines, who had conveyed and been paid for the whole of the property while they owned but the half. On the contrary, he gave thereafter deeds of warranty to all the defendants, — who are sixty-two in number, — and he and they occupied and improved the premises down to the commencement of this suit. Between that time and the date of the letter was a period of nearly seventeen years. What improvements were made and how far the property had risen in value are not disclosed, nor does it appear what stimulated Chauncey to violate his promise and commence this attack on the defendants.

The estoppel here relied upon is known as an equitable estoppel, or estoppel *in pais.* The law upon the subject is well settled. The vital principle is that he who by his language or conduct leads another to do what he would not otherwise have done, shall not subject such person to loss or injury by disappointing the expectations upon which he acted. Such a change of position is sternly forbidden. It involves fraud and falsehood, and the law abhors both. This remedy is always so applied as to promote the ends of justice. It is available only for pro-

tection, and cannot be used as a weapon of assault. It accomplishes that which ought to be done between man and man, and is not permitted to go beyond this limit. It is akin to the principle involved in the limitation of actions, and does its work of justice and repose where the statute cannot be invoked. Here, according to the finding of the court, the time of adverse possession lacked but a year and a month of being twenty years, — when, it is conceded the statutory bar would have been complete.

In *Faxton* v. *Faxon* (28 Mich. 159), a mortgagee holding several mortgages prevailed on a son of the deceased mortgagor, then intending to remove to a distance, to remain on the premises and support the family, by assuring him that the mortgages should never be enforced. The son supported the family, and the property grew in value under his tillage. After the lapse of several years the mortgagee proceeded to foreclose. He was held to be estopped by his assurances upon which the son had acted. The court said: " The complainant may have estopped himself without any positive agreement, if he intentionally led the defendants to do or abstain from doing any thing involving labor or expenditure to any considerable amount, by giving them to understand they should be relieved from the burden of the mortgages. In *Harkness* v. *Toulmin* (25 id. 80) and *Truesdale* v. *Ward* (24 id. 117) this principle was applied, in the former case, to the extent of destroying a chattel mortgage, and in the latter, of forfeiting rights under a land contract, where parties were led to believe they were abandoned. There is no rule more necessary to enforce good faith than that which compels a person to abstain from asserting claims which he has induced others to suppose he would not rely on. The rule does not rest on the assumption that he has obtained any personal gain or advantage, but on the fact that he has induced others to act in such a manner that they will be seriously prejudiced if he is allowed to fail in carrying out what he has encouraged them to expect." Cooley, J., was inclined to doubt the sufficiency of the proof, but said, finally: " His " (the mortgagee's) " assurances have undoubtedly been relied upon and acted upon by the defendants, and, considering the great lapse of time without any claim under the mortgages on the

part of the complainant, I am not disposed to dissent from the conclusion of my brethren." The case before us arose also in Michigan. In *Evans et al.* v. *Snyder et al.* (64 Mo. 516), the heirs assailed an administrator's sale. No order of sale could be found. This was held to be a fatal defect. But the Supreme Court of the State held that where they stood silently by for years, while the occupant was making valuable and lasting improvements on the property, and redeeming it from the lien of the ancestor's debts, they would be estopped from afterwards asserting their claim. Here, as by Judge Cooley, stress is laid upon the lapse of time. This is also a feature of the case in hand.

Other authorities to the same effect are very numerous. They may be readily found. It is unnecessary to extend this opinion by referring to them.

We think the facts disclosed in the record make a complete case of estoppel *in pais*.

But it is said this objection to the plaintiff's claim is not available at law, and must be set up in equity.

" This is certainly not the common law. Littleton says : ' And so a man can see one thing in this case, that a man shall be estopped by matter of fact, though there be no writing, by deed or otherwise.' Lord Coke, commenting hereon, gives an instance of estoppel by matter in fact, — this very case of partition. Co. Litt. 356, sect. 667. And such an award has been held sufficient to estop a party against whom ejectment was brought. *Doe d. Morris et al.* v. *Rosser*, 3 East, 15." *Brown* v. *Wheeler*, 17 Conn. 345, 353.

In *City of Cincinnati* v. *Lessee of White* (6 Pet. 431), the proprietors of the city plat, in 1789, dedicated the ground between Front Street and the Ohio River to the public for commercial and other purposes. The legal title had not then emanated from the government of the United States. In this state of things the Statute of Limitations does not run. White long subsequently acquired the legal title and brought ejectment for the premises. This court said (p. 441) : " This is a possessory action, and the plaintiff, to entitle himself to recover, must have the right of possession ; and whatever takes away this right of possession will deprive him of the remedy by eject-

ment.   Adams, Eject. 32; Starkie, part 4, 505–507." This is the rule laid down by Lord Mansfield, in *Atkyns* v. *Hoarde*, 1 Burr. 119. "Ejectment," says he, " is a possessory remedy, and only competent where the lessor of the plaintiff may enter, and every plaintiff in ejectment must show a right of possession as well as of property."  If the plaintiff in the present case was not entitled to possession, how, according to this authority, could he recover?  If he had recovered, and a court of equity would have enjoined him from executing the judgment by a writ of possession, we ask, again, how could he recover in this action?  Is not the concession that relief could be had in equity fatal to the proposition we are considering?  In *Stoddard* v. *Chambers* (2 How. 284), it was said by this court: " On a title by estoppel, an action of ejectment can be maintained."  We do not overlook the fact that a land-claim had been conveyed before it was confirmed by an act of Congress to the assignor and his legal representatives.  It was held that on such confirmation the legal title became vested in the former, " and inured, by way of estoppel, to his grantee and those who claimed by deed under him."  In that case, as in this, there was no formal transfer of the title.  The transfer was made, as under a statute of limitations, when the bar is complete, by operation of law.  *Leffingwell* v. *Warren*, 2 Black, 599.  Why may not a like transfer be held to have been made in this case?  The reason given for the rule of inurement and estoppel by virtue of conveyances is, that it avoids circuity of action.  Does not the same consideration apply, with equal force, in cases of estoppel *in pais?*  Why is it necessary to go into equity in one case and not in the other?

It has never been held that the Statute of Frauds applies to cases of inurement, and it has been conceded that it does not affect cases of dedication.  Where is the difference in principle in this respect between those cases and the one before us?  But here this point cannot arise, because the promise relied upon was in writing.  In *City of Cincinnati* v. *Lessee of White* (*supra*), this court, speaking of the dedication there in question, said, " The law considers it in the nature of an estoppel *in pais*, which precludes the original owner from revoking such dedication." and that a grant might have been presumed, " if that

had been necessary, and the fee might be considered in abeyance until a competent grantee appeared to receive it; which was as early as the year 1802, when the city was incorporated." Here there was a grantee capable of taking the fee all the time from the date of the letter. The common law is reason dealing by the light of experience with human affairs. One of its merits is that it has the capacity to reach the ends of justice by the shortest paths.

The passage of a title by inurement and estoppel is its work without the help of legislation. We think no sound reason can be given why the same thing should not follow in cases of estoppel *in pais* where land is concerned.

This subject has been carefully examined in Bigelow on Estoppel, pp. 533, 537. The learned author comes to no final conclusion whether in cases like this the defence may be made at law, or whether a resort to equity is necessary. The former is our view. Whether the title passed or not, the fact that the plaintiff was not entitled to possession of the premises was fatal to the action.

Chauncey conveyed to the plaintiff in error by deed of quitclaim. He is not, therefore, a *bona fide* purchaser. *Piatt* v. *Oliver*, 3 How. 333; *May* v. *Le Claire*, 11 Wall. 217. Morton and the defendants were in possession. For both these reasons, he took whatever title he acquired subject to all the rights, legal and equitable, of Morton and of the defendants, who deraigned their titles from the latter.

*Judgment affirmed.*