*In re* MARSHALSHIP FOR THE SOUTHERN AND MIDDLE DISTRICTS OF ALABAMA.

(*District Court, M. D. Alabama.* February, 1884.)

1. NOMINATION FOR OFFICE BY THE PRESIDENT—REJECTION BY THE SENATE CONCLUSIVE—REV. ST. § 1768.

    Where the senate of the United States rejects the nomination of a person for an office made by the president its action is conclusive. Rev. St. § 1768.

2. PRESIDENT OF THE UNITED STATES—POWER TO SUSPEND OFFICERS AND TO MAKE TEMPORARY APPOINTMENTS.—REV. ST. § 1768.

    Rev. St. § 1768, authorizes the president to suspend an officer, and to make a temporary appointment to fill the vacancy thus created until the end of the next session of the senate.

3. PERIOD OF TEMPORARY APPOINTMENT BY PRESIDENT OF UNITED STATES TO FILL VACANCY IN OFFICE—RULE WHEN VACANCY OCCURS THROUGH SUSPENSION OF OFFICER.

    A commission issued by the president of the United States to fill a vacancy in an office, during a recess of the senate, continues until the end of the next session of congress, unless sooner determined by the president, even though the person commissioned shall have been in the mean time nominated to the office, and his nomination rejected by the senate; and this rule applies where the vacancy occurs through the suspension of an officer.

4. TEMPORARY APPOINTMENT BY PRESIDENT OF THE UNITED STATES—EFFECT OF REFUSAL OF SENATE TO CONFIRM TEMPORARY APPOINTEE FOR PERMANENT APPOINTMENT—EFFECT OF REFUSAL ON SUSPENDED OFFICER.

    The temporary appointment of a person to an office by the president of the United States is not terminated by the refusal of the senate to confirm him for the permanent appointment, and the powers of a suspended officer whose position he occupies are not revived by such refusal.

5. SUSPENSION OF OFFICER BY PRESIDENT OF THE UNITED STATES—SUFFICIENT
   REASON PRESUMED.
       When the president of the United States suspends a person from office, his
   reasons will be presumed to be sufficient.


Heard on Motion of Mathias C. Osborn, former marshal, to be rec-
ognized and held by the court as now entitled to resume the duties of
that office.

*Saml. F. Rice,* for motion.

*Geo. Turner* and *Geo. H. Patrick, contra.*

BRUCE, J.   Mathias C. Osborn was nominated by the then presi-
dent of the United States to the senate for the office of marshal of the
Middle and Southern districts of Alabama, and was confirmed by the
senate in the year 1880.   He qualified by taking the oath and giving
the bond, as required by law, and continued to hold and exercise the
duties of the office of United States marshal for the Middle and
Southern districts of Alabama until the seventeenth day of March,
1883, when he was suspended from the office by the order of the
president of the United States, and Paul Strobach was designated to
perform the duties of the office in the mean time.   Paul Strobach
qualified by giving the bond and taking the oath of office required by
law, and entered upon the discharge of the duties of the office, and
has continued to discharge the duties of the office from that date
until the present time.   The suspension of Osborn, and the designa-
tion of Strobach to perform the duties of the office, occurred during
the recess of the senate ; and the suspension of Osborn was on terms
until the end of the next session of the senate, and the designation of
Paul Strobach was to perform the duties of the office in the mean
time, subject to all the provisions of law applicable thereto.

The president of the United States, within 30 days after the com-
mencement of the present session of the senate, in December last,
nominated Paul Strobach to the senate for the marshalship, in the
place of the suspended officer, Osborn; and on the fifth day of the
present month of February, 1884, the senate rejected the nomination
of Paul Strobach for the office to which the president had nominated
him to the senate.   That this rejection is conclusive against Mr.
Strobach for the office of marshal, under what may be called a per-
manent appointment, meaning by that a nomination by the president
and confirmation by the senate, is quite clear, because the statute
provides (section 1768) that "if the senate, during such session, shall
refuse to advise and consent to an appointment in the place of any
suspended officer, then, and not otherwise, the president shall nom-
inate *another person,* as soon as practicable, to the same session of the
senate for the office."   But the question is, what effect has this re-
jection of the senate of the nomination of Paul Strobach to the office
of marshal, at and during the present session of the senate, upon
what may be called his temporary appointment, or his designation by
the president to perform the duties of the office during the suspension

of Marshal Osborn?  The president's power to suspend is not questioned and his power to make what is called a temporary appointment is not questioned.  The first clause of section 1768 of the Revised Statutes provides:

"During any recess of the senate, the president is authorized, in his discretion to suspend any civil officer, appointed by and with the advice and consent of the senate, * * * until the end of the next session of the senate, and to designate some suitable person * * * to perform the duties of such suspended officer in the mean time. * * *"

The statute then authorizes the president to suspend and make a temporary appointment until the end of the next session of the senate, and he has done so, Mr. Strobach being that appointee, and he holds the office now under such appointment.  The senate has not acted upon that temporary appointment, nor does it appear that the senate has any power or authority, under existing law, to act directly upon such temporary appointment or designation.  True, if the president nominates, and the senate confirms the nomination, then the person so nominated and confirmed to the office could qualify, take the office, and so cut short the term of the temporary appointee, and Mr. Strobach could not hold the office against such appointee.  But Mr. Osborn does not stand in that position to the office, for, though he has been nominated and confirmed to the office, yet he has also, since then and during a recess of the senate, been suspended by the president of the United States from the office of marshal until the end of the present session of the senate, and, in doing so, the president was acting clearly within the authority conferred upon him by law.  This power given by law to the president was, no doubt, given for good reasons.  It will occur to any one, on a moment's reflection, that the good of the public service might very often render it imperative that the president should have and exercise such power; and, under existing law, the senate, when it convenes, has no more power or authority to act upon the president's order suspending an officer under section 1767, than it had to act upon the designation of the person by the president to perform the duties of the office in the mean time.

The idea that seems to underlie the argument of counsel for the motion is that when the president suspends an officer and makes a temporary appointment in the recess of the senate, then, upon the meeting of the senate, it must act upon such suspension and temporary appointment; and if the senate declines concurrence in such suspension and appointment, then the suspended officer forthwith resumes the functions of the office, and the temporary appointment is at once terminated.  That is an error, perhaps a popular one, and may grow out of the fact that such was the provision of the first tenure of office act of congress, approved March 2, 1867.  But that act was materially modified and changed by a subsequent act of

congress, approved April 5, 1869, which is the law as we now have it in sections 1767–1769 of the Revised Statutes of the United States.

An examination of the act of April 5, 1869, shows that the clauses restrictive of the president's power, in the act of March, 1867, were omitted from the later act, which does not provide that the president, when he suspends an officer and designates some suitable person to perform temporarily the duties of such office, that it shall be until *the next meeting of the senate, and until the case shall be voted on* by the senate, but the language is, until the end of the next session of the senate; nor does the present act require the president, within 20 days after the first day of the meeting of the senate, to report to the senate such suspension, with the evidence and reasons for his action in the case; nor is it provided in the present law that if the senate shall refuse to concur in such suspension, such officer so suspended *shall forthwith resume the functions of his office,* and the powers of the person so performing the duties in his stead shall cease. These clauses restrictive of the president's power, found in the first tenure of office act, were repealed by the later act and are not now the law; and the original act was passed, and subsequently modified and changed, for reasons familiar to those who were actors in, or are students of the history of, that time.

These acts to which reference has just been made are of comparatively recent date, and there is, perhaps, but little judicial authority upon their construction; but a number of authorities have been cited upon the power of the president under article 2 of section 2 of the constitution of the United States, which provides that "the president shall have power to fill up all vacancies that may happen during the recess of the senate, by granting commissions which shall expire at the end of their next session." Section 1769 of the Revised Statutes of the United States provides: "The president is authorized to fill all vacancies which may happen during the recess of the senate, by reason of death or resignation or expiration of term of office, by granting commissions which shall expire at the end of their next session thereafter. * * *" The language used in the constitution and in section 1769, in reference to the power of the president to fill vacancies, is very much the same language used in the act under consideration, authorizing the president to make temporary appointments in cases of suspended officers. The authorities on this subject—that is, the nature and duration of a temporary appointment made by the president to fill a vacancy—are that a commission issued by the president during a recess of the senate continues until the end of the next session of congress, unless sooner determined by the president, even though the person commissioned shall have been in the mean time nominated by the president to the office and his nomination rejected. *U. S.* v. *Kirkpatrick,* 9 Wheat. 721; *Case of Isaac Hill,* 2 Op. Attys. Gen. 336; *Gilpin* v. *O'Neil,* 8 Int. Rev. Rec. 137; *Ex parte Hennen,* 13 Pet. 230.

It is said this is not a vacancy, and it is true that it is not a vacancy in the absolute sense, such as results from the death, resignation, or expiration of term of office of the incumbent of the office, as contemplated by section 1769 of the Revised Statutes. In a case of the suspension of an officer there are contingencies upon the happening of which the suspended officer may resume the duties of the office; that is where the senate fails or refuses consent and advice to the nominations for office made by the president, and if this failure or refusal continues until the end of the session, and the former incumbent's time has not then expired, he will then, and not till then, resume the duties of the office. Whether it be a vacancy caused by the death, resignation, or expiration of term of office of the incumbent o the office, or whether it be a suspension of an officer by the president under section 1768, in either case the duration of the temporary appointment is the same; it is to the close of the session of the senate, subject, as we have seen, to a concurrence of opinion and action by the president and the senate, by the nomination and confirmation of a person other than the rejected nominee to the position.

Some confusion arises because the same person designated for the temporary appointment was in this case nominated to the senate for the permanent appointment; but suppose the president, after having designated Mr. Strobach for the temporary appointment, had nominated Mr. T. for the permanent appointment, and the senate had rejected Mr. T., just as it has rejected Mr. Strobach, for the permanent appointment, could it be held that the rejection by the senate of Mr. T. for the permanent appointment affected the temporary appointment of Mr. S.? To ask the court to terminate the temporary appointment of Mr. Strobach because the United States senate has rejected him for the permanent appointment, is to ask the court to act without law or logic; and the proposition is not only to do that, but also to terminate the suspension of Mr. Osborn, and authorize him to resume the duties of the office, which is equally without the authority of law. The answer to all that is that the president of the United States has, for reasons which the court will presume to have been sufficient, suspended Mr. Osborn until the close of the present session of the senate, and has designated Mr. Strobach as a suitable person to perform the duties of the office in the mean time. The *Case of Embry,* 100 U. S. 380, is relied on by both sides in support of their respective positions. That case is not conclusive here, because the question here was not involved, and barely touched upon in the opinion of the court.

The result of these views is that the motion is denied.