## GIONNONATTI v. MICHELLETTI *et al.*

A purchaser of realty sold under mortgage foreclosure settled with the mortgagee for a stipulated sum, for a part of which the certificate of sale was pledged. A payment under the agreement was made on the purchaser's behalf to M., which, with others, made a sum in excess

of that due the mortgagee.  M. had obtained a quitclaim deed from the mortgagee, and the latter afterwards surrendered the certificate of sale for a sheriff's deed, and by warranty deed conveyed the premises to M.  Such purchaser had no actual knowledge of the conveyance to M. when the last payment was made, and the latter represented that he was acting for the mortgagee in receiving the money, and never · questioned the mortgagee's claim under the contract made in his presence.  The purchaser sued to quiet his title and for an accounting. *Held*, sufficient to warrant a finding that M. was estopped from asserting any claim against the purchaser.

(Opinion filed October 2, 1901.)

Appeal from circuit court, Lawrence county.  HON. A. J. PLOWMAN, Judge.

Action by Carlo Gionnonatti against Pietre Michelletti and others, to quiet title to certain realty and for an accounting.  From a judgment in favor of plaintiff, defendant Pietre Michelletti appeals.  Affirmed.

*Frawley & Laffey,* for appellant.

*John R. Wilson,* for respondent.

FULLER, P. J.   Plaintiff having prevailed in this action to quiet the title to certain real property and for an accounting, the defendant Michelletti appeals.  Subject to an existing mortgage of $950 executed in favor of Gustavus Battista Vigna by Pietre Gionnonatti the property in dispute was sold by the latter and conveyed to respondent on or about the 26th day of September, 1889, and, after an apparently regular statutory foreclosure of such mortgage, respondent and defendant Vigna, who held the certificate of sale, entered into the following valid written instrument, which was duly recorded in the office of the register of deeds:  "Memorandum of agreement this day made and entered into by and between Carlo Gionnonatti, party of the first part, and Vigna G. Battista, party of

the second part, all of the county of Lawrence and state of South
Dakota, witnesseth that for the purpose of effecting a full settle-
ment between the parties hereto it is hereby agreed that there is due
from the party of the first part to the party of the second part the
sum of $1,933.69, as the same is evidenced by a sale under foreclos-
ure by advertisement of mortgage dated August 26, 1899, and to cer-
tain judgments in favor of party of second part, and against said
party of the first part, in one of which said judgments one Peter
Gionnonatti· is a co-defendant, both rendered in circuit court of
Lawrence county, South Dakota, August 26, 1890.    That under the
above settlement said party of the second part agrees to take in full
satisfaction the sum of $1,718.55, being the sum of $1,550 on prin-
cipal of said indebtedness, and $168.55 costs and disbursements;
said sum of $1,718.55 payable as follows:  Five hundred dollars
paid in hand on the execution and delivery of this contract and the
note and mortgage hereinafter referred to, and the balance, to-wit,
$1,218.55, to be paid on or before two years from the date hereof,
with interset at the rate of six per cent per annum from date, ev-
idenced and secured as follows:   One promissory note, executed
by said party of the first part to said party of the second part for
five hundred dollars, payable, with interest, as aforesaid, secured
by chattel mortgage, and the certificate of sale under said foreclos-
ure proceedings to stand as security for payment to said party of
the second part of the sum of $718.55, with the right to said party
of the first part to redeem from said mortgage foreclosure sale (in
which said party of the second part is plaintiff, and Peter Gionnon-
atti and Mary Gionnonatti are defendants) within two years from
this date, by the payment to said party of the second part, or into the
clerk of said court to his credit, the said sum of $718.55, with interest
thereon from the date hereof at the rate of six per cent per annum.

Witness our hands this 2nd day of October, A. D. 1890.    G. Battista. Vigna.    Carlo Gionnonatti."

Among other things the court found: "That the following payments were made by and for the plaintiff, Carlo Gionnonatti, to and for the defendant G. Battista Vigna, by virtue of and upon the agreement entered into by and between them on the 2d day of October, 1890    to-wit:    Five hundred dollars paid on the day of the execution and delivery of the said agreement, and five hundred dollars thereafter, with all interest due thereon, and being the amount evidenced by the promissory note and secured by the chattel mortgage described in the said agreement.    That on or about the 26th day of April, 1895, the plaintiff, Carlo Gionnonatti, paid to the defendant, G. Battista Vigna, the further sum of sixty-eight dollars, upon which said agreement and on or about the same day tendered and offered to the said Vigna his certain promissory note for the sum of $517.34, which said note had heretofore been executed and delivered by the said Vigna and one J. S. Antonelli to F. D. Smith, and which said note, together with the interest thereon, amounted to the sum of $651.74, and was then owned and held by this plaintiff.    That on or about the 8th day of January, 1896, there was due and unpaid to the defendant Vigna from the plaintiff, Carlo Gionnonatti, upon the agreement executed · between them on the 2d day of October, 1890, the sum of $204.56.    That on said 8th day of January, 1896, Marie Gionnonatti paid to the defendant, Pietre Michelletti, for and on behalf of the plaintiff, Carlo Gionnonatti, for and upon the said agreement of October 2, 1890, the sum of five hundred and fifty dollars; and that said payment of five hundred and fifty dollars, so made as aforesaid, was in excess of the sum due upon said agreement by this plaintiff in the sum of $345.44."

It is conceded that respondent paid $500 when the agreement

was executed, and that of the $1,218.55 remaining he paid, on or about the 26th day of April, 1895, $68, to be applied on the note for $718.55, secured by the certificate of sale, and he also paid, at about the same time, the entire amount of the $500 note and interest secured by chattel mortgage. Prior to this time defendant Vigna and another had, in settlement for certain grain, executed and delivered to F. D. Smith their promissory note for $517.34, which, with accrued interest, amounted to $651.74. Some time in April or May, 1895, respondent, for a valuable consideration, bought this note, and by giving full credit therefor, in making a final adjustment of accounts between the parties, the trial court found $345.34 due from defendant Vigna to respondent, and judgment was accordingly entered. In arriving at such conclusion, a credit was given respondent of $550, paid in his behalf on the 8th day of January, 1896, to the appellant, Pietre Michelletti, who had obtained from Vigna a quitclaim deed of the premises dated September 20, 1892, given apparently as security for an existing indebtedness, and duly recorded in the office of the register of deeds. Thereafter Vigna, with Michelletti's knowledge, collected money from respondent to apply on the indebtedness secured by the certificate of sale, and on the 6th day of August, 1895, he surrendered such certificate for a sheriff's deed, and thereupon transferred the premises by warranty deed to appellant, Michelletti, who caused such deed to be duly recorded. The only fact that seems conclusively established by the oral evidence is that none of these parties was able to testify understandingly in the English language, and each has habitually contradicted himself, squarely, on about every material point.

The theory of appellant seems to be that by his deeds, duly recorded, he became the absolute owner of the premises, yet he concedes the right of respondent to a deed on the further payment of

$532.50, but, of course, he denies the right of respondent to offset any part of the Vigna note. Upon this most strikingly ambiguous and conflicting testimony it would be exceedingly hazardous to determine on appeal that the trial court, before whom all the witnesses appeared, was not fully justified in concluding that, prior to the 8th day of January, 1896, respondent had no actual knowledge of the conveyance from Vigna to Michelletti, and that the conduct of the latter towards respondent, with reference to the claim of Vigna, was intentionally deceptive, and sufficient to repel the inference that he had, or would ever claim the slightest interest in the premises, or the right, otherwise than as the authorized agent of Vigna, to collect or receive any part of the money due from respondent, according to the terms of the contract. With full notice of this contract, and imputable knowledge of respondent's ignorance of his deed, Michelletti stood silently by when it was his duty to speak, and actually represented himself to respondent as the agent of Vigna for the purpose of collecting the money. Though Vigna, Michelletti, and respondent were, after the first conveyance, frequently together for the express purpose of talking over and acting upon the contract, with reference to the payments therein specified, Michelletti never questioned Vigna's repeated claims under such contract, made in his immediate presence and hearing, but, on the contrary, declared that the part he was taking in the business was for and on behalf of Vigna, who had requested him to assist in making the collection.

As a fair sample of the method of expression employed by the various witnesses, and to give Michelletti's version of his relation to the subject-matter, we copy from his cross-examination as follows (by Mr. Wilson) : "I have been down to Gionnonatti's ranch. In 1895. In the springtime. I go down to get money for myself.

Go down to claim mortgage when I go down. Went down to collect money for myself. Q. Did you tell Carlo Gionnonatti at the time you were down there that Vigna had sent you down to get that money for him? A. Yes, sir; not for me. At the same time I told to Carlo, 'You want to pay Vigna.' Carlo said, 'Maybe after while; have no money now.' Didn't tell Carlo I wanted the money for Vigna. Vigna did want to get away, too. I never told Carlo he owed me anything. It was Petro and Mary owed me the mortgage. Pete owed me the mortgage. Q. Did you ever claim that he owed it to you or to Vigna? A. To me. Q. When did you ever tell him that he owed it to you? A. When I was down that time. That money belongs to me. Didn't tell him I come down there for money just for Vigna. * * * Q. When did you first tell either one of the Gionnonattis that the money was coming to you on the ranch? A. It was about the month of January or February, 1895. Q. That was the first time you ever spoke to them about having any interest in this ranch, was it? A. Yes; he had spoken to them before. Spoke to Mary and Pietre at Central. Never spoke to Corlo about having any interest in that ranch."

Although respondent testified that he knew, in 1892, that Vigna had turned the mortgage over to Michelletti, he swears positively, in the same connection, that he never knew or heard anything about it until January, 1896, and that Michelletti always represented that he was acting for Vigna in reference to the business. Upon the entire record we cannot say that the evidence preponderates against any of the material findings, or that the court was not justified in concluding, as a matter of law, that Michelletti was estopped by his conduct from asserting any claim against respondent. While a person of ordinary understanding might have ascertained the true relation existing between Vigna and Michelletti, respondent did not possess

ample means of knowledge, and, under the circumstances, he is excused for not having consulted the records of the county. We think the court was justified in quieting the title in respondent, and that the doctrine announced in the case of Eickelberg v. Soper, 1 S. D. 563, 47 N. W. 953, is applicable to the peculiar circumstances of this case.

Both by his language and by his conduct, Michelletti led respondent to believe that his relations with Vigna were simply that of principal and agent, and by such assurance induced respondent to act in a manner prejudicial to himself. There is no rule more equitable or necessary to enforce good faith than that which compels a person to abstain from asserting a claim of his own which he has induced others, to their detriment to suppose did not exist. Dickerson v. Colgrove, 100 U. S. 578, 25 L. Ed. 618. A careful examination of the entire record leads us to believe that the findings of fact, so far as essential, are sustained by the evidence, and that the conclusions of law are in accordance therewith.

The judgment appealed from is affirmed.