## KAPIOLANI ESTATE, LTD., *v.* LORRIN A. THURSTON

### PETITION FOR REHEARING.

ARGUED FEBRUARY 12, 1906.    DECIDED FEBRUARY 28, 1906.

FREAR, C.J., HARTWELL AND WILDER, JJ.

REHEARING—*denied, when.*

A rehearing is denied because, although certain questions submitted at the first hearing were not without difficulty, it does not appear that the decision was clearly wrong or that it is probable that that could be shown on a rehearing—the court intimating that if that did appear a rehearing might be granted notwithstanding remarks in former cases to the effect that a rehearing would not he granted merely because the court had not overlooked arguments made or cases cited by counsel, etc.

MARRIAGE, EVIDENCE—*reputation of illicit cohabitation may be shown, when.*

Evidence that cohabitation was of an illicit nature is admissible to rebut evidence of cohabitation, acts of the parties and declarations of relatives relied on to prove marriage.

### OPINION OF THE COURT BY FREAR, C.J.

This is a petition for a rehearing of the case decided ante, page 312. Argument was heard at the request of one of the members of the court in accordance with the rule.

The first ground is that the court overlooked matters decisive of the case in deciding that there was not sufficient evidence to go to the jury on the question of estoppel in pais. Under this ground objection is made particularly to the portions of the opinion which treat of the statement of Queen Kapiolani as a mere promise without consideration or a statement of intention which she had a right to change; which state that it would not have been the part of a prudent man, in his capacity of trustee, to convey the land with covenants of warranty in sole reliance upon the queen's statements, the contention being that the estoppel, if available at all, rests upon all the facts and circumstances in the case and not on any part, and that the opinion does not attempt to deal with all the facts; which state that the trustee was not obliged to expend its own money or incur personal obligations in defending suits for the land, that a trustee is never required to give covenants of warranty and that the queen's statement did not induce him to expend money to purchase the land or for improvements upon it. It is urged also that the court overlooked the main question argued on this part of the case, namely, whether there was sufficient evidence to go to the jury, rather than whether a case of estoppel was made out or not, and that in deciding this point the court overlooked cases cited by counsel. The decision, so far as the question of estoppel in pais is concerned, was based mainly on the view that the evidence was too uncertain to justify an inference by a jury that the queen's statements referred to this land, in other words, that the evidence was not sufficiently definite to warrant a finding of an estoppel. Other statements in the opinion upon the question of estoppel in pais should be read in the light of this view, or, in so far as they were made upon a different theory, they were made with a view to covering possible contentions as to the purport of the queen's statements. We do not mean to imply that the question whether there was sufficient evidence to go to the jury upon this point was free from difficulty or that it was a point upon which much could not be said upon either side, but after careful consideration the court felt obliged to take the view it did and so far as it can see it did so

without overlooking any of the contentions made by counsel. This alone might be sufficient, as contended by the appellee under remarks made in certain former opinions of the court for denying a rehearing, but we are not prepared to go to that extent. If it appeared that the decision was clearly wrong or that it was probable that that could be shown upon a rehearing, we would be loath to deny a rehearing, and we are not sure that the court has yet gone so far as to deny a rehearing under such circumstances. In the present case, although realizing the difficulty of the question submitted, we do not see reason for granting a rehearing upon this point.

The next ground in support of the petition is that the court erred in holding that the *Okuu* judgment would not be conclusive against Kapiolani and her successors in title even if counsel was employed by her or on her authority to defend the *Okuu* case. In support of this ground it is urged first that the contrary became the law of the case under the decision in 16 Haw. 475. In that decision the court said that "the evidence, if admissible at all and not controverted, would be conclusive evidence that the devisee was estopped by the judgment in that case." That remark was made in holding that the testimony which was offered to show that the attorney for the defendant in the Okuu case had been retained by the administrator with the will annexed of King Kalakaua, was inadmissible for the purpose of showing that Queen Kapiolani, who was Kalakaua's devisee, was bound by the judgment in the *Okuu* case, because a judgment against the administrator with the will annexed would not be binding upon the devisee inasmuch as such administrator did not represent the land or the devisee unless, as did not apear in this case, the will imposed upon him some charge or duty concerning the land. It was not held in effect, as now contended, that if the attorney had been employed by Kapiolani or by the administrator on her behalf she would have been concluded by the judgment. It was not even held that the evidence would have been admissible for the purpose of showing that the administrator with the will annexed would be bound by the judgment. The evidence in regard to Kapiolani's dealings

with the attorney, if there were any such dealings, was held inadmissible in the decision upon which a rehearing is now sought. It is urged secondly in support of this ground that the court misapplied the rule in *Castle v. Kapiolani Estate,* ante, page 61, in holding, as held in that case, that "if a plaintiff wishes to secure a judgment to bind the landlord, he must make him a party, since in no other way can he compel him to appear or become defaulted," the contention being that, reading the entire paragraph in which the quotation just made occurs in the *Castle* case, the court intended to hold that if a landlord voluntarily appeared and defended in the tenant's name, although not a party himself, he would be bound. Not only was such a ruling unnecessary for the decision of that case, but there was no attempt to make such a ruling. The furthest that the court went in that direction was to state negatively that a judgment in ejectment would not include a landlord who was not impleaded or did not defend in the defendant's name or his own. It did not hold that he would be concluded if he did defend in the defendant's name, not being a party himself.

The third ground of the petition is that the court erred in holding that evidence of reputation as to the illicit nature of Okuu's cohabitation with Kahoopuipui was admissible, the contention being that evidence of such reputation is not admissible except by way of rebuttal of evidence of reputation of marriage and that in this case the defendant-appellant did not attempt to establish marriage by reputation. No doubt if a formal marriage is proved reputation that the cohabitation was of an illicit nature would be inadmissible to disprove it, but in this case the defendant endeavored to show a marriage, as he himself states, by the declarations and acts of the parties and recognition by relatives. For instance, one witness for the defendant testified that Okuu and Kahoopuipui lived together as man and wife and that the witness heard that they were married, not from them but from other parties, parties that belonged to the family. The declarations and acts of the parties and recognition by relatives, which defendant's counsel says he

relies on, did not show a formal marriage. They were in the nature of evidence of habit and repute. It is immaterial that no witness for the defendant was asked specifically as to what the reputation was in regard to the nature of the cohabitation. The cohabitation was the main fact and the question was as to its nature. Declarations and acts of the parties and recognition by relatives and friends are, as sometimes stated, merely the shadows of the cohabitation—which indicate its nature. We know of no rule to the effect that evidence of reputation that the cohabitation was illicit is inadmissible to rebut evidence consisting of conduct and recognition tending to show that it was legal.

The fourth and last ground for the petition is that the court was misled in regard to the materiality of the evidence of Kahoopuipui's expulsion from the church on the ground that her cohabitation with Okuu was unlawful. The court held that this evidence was inadmissible, but that the error in admitting it was under the circumstances insufficient to call for a new trial. It is contended that it is only when the fact is not only proved by other evidence but is uncontradicted that the court can say that any evidence is so immaterial that its erroneous admission will not require a new trial. The court considered this phase of the case with great care and felt that its conclusion was sound in principle and supported by many other courts, and particularly by the decision in 185 U. S., from which it quoted. We are frank to say, however, that this point, as well as that in regard to estoppel in pais, was one upon which the court hesitated much. Probably the court went further than it has ever gone before in holding that the error was not such as to require a new trial, but it did so only after careful consideration and upon a belief that the move was one in the right direction.

The petition for a rehearing is denied.

*D. L. Withington* for defendant-petitioner; *Castle & Withington* on the petition.

*S. H. Derby* contra.

The bill of exceptions presented for adjudication the defendant's claims of (1) estoppel in pais, (2) estoppel by judgment against a lessee and (3) admission of irrelevant evidence (a) of reputation of nonmarriage of Okuu and (b) of Kahoopuipui's dismissal from her church. The defense of the statute of limitations had been presented at the trial but failed from lack of evidence of adverse possession for the statutory period.

After mature deliberation upon each of these matters it was held that the landlord, not being a defendant in the action for other land under the same title, was not bound by the judgment against the lessee, even though she engaged an attorney to defend; that the reputation of nonmarriage was properly shown in rebuttal of the plaintiff's evidence of a reputed marriage and that the admission in evidence of the irrelevant fact of dismissal from the church did not require the verdict to be set aside.

As to the estoppel in pais, it was held that Kapiolani's statement to Mr. Castle did not clearly enough show that she referred to the land in controversy, although Mr. Castle believed that it did, to go to the jury and that if the evidence had been clear enough to authorize a finding by the jury that she referred to this land it did not constitute an estoppel in pais for several reasons, among others, because she was not aware that the purpose of Mr. Castle's inquiry was to learn whether he would be safe in warranting the title to future purchasers,—a thing which a trustee is not expected to do. To warrant the title on the strength of her statement was not, as we thought, the course which a prudent person would ordinarily take. Without intimating that sole reliance on such statement was required, it is obvious that the warranty was not made in sole reliance upon it, since the other defenses made at the trial would properly have been relied upon, particularly Mr. Castle's personal knowledge, of which he testified, of the vital fact of Okuu's marriage, as shown by general reputation. His position in asking the queen whether she claimed the Okuu lands, and upon

learning from her that she did not do so, was in no respect different from that of Leialoha, whom he represented. All that the queen could have inferred from what he said was that he was unwilling to become Leialoha's kahu. (guardian) if he was going to be sued for the land. If Leialoha had asked the question and received the same answer she would not have been justified thereby in warranting the title. The queen's words neither have the certainty as to their meaning required of an estoppel in pais, nor were they used with reference to any purpose suggested by the inquiry. By saying, "I make no claim to these lands, no claim whatsoever," she may have meant, "I have no claim," showing her ignorance of her title, and not misleading Mr. Castle who knew of the king's deed from Kahoopuipui. If she meant, "I am now making no claim," this was true; if, "I will make none," it would be a promise without consideration, or an assertion of intention, which could be changed; if she meant, "I have no right in the land," he knew that she had the rights of a devisee of the grantee; if she meant that she regarded herself as bound, or was bound, by the Okuu judgment this would be an admission of a conclusion of law which does not estop; if the object of the interview was to induce her to to release her rights, or to agree to abandon them, or not assert them, the obvious course was to ask her to do so, when her answer would have left no room to doubt her meaning.

The plaintiff relied on *Dickerson v. Colegrove,* 100 U. S. 578. The facts in that case were that one Chauncey, who owned the land in controversy, dying in 1853 in Michigan, his daughter, shortly after his death, conveyed the premises, by warranty deed, to one Morton. Three years later Morton learned that there was a son in California and caused a letter to be written to him to learn whether he made any claim to the premises. In response, the son wrote to his sister, "You can tell Mr. Morton for me he need not fear anything from me. Thank God I am well fixed here and you can claim all there. *This letter will be enough for him.* I intended to give you and yours all my property there and more if you need it." Morton thereupon took no measures to perfect his title or procure any redress

from his grantor who had conveyed and been paid for the whole of the property. On the contrary, he thereafter gave deeds of warranty to all of the defendants (62 in number) and he and they occupied and improved the premises until the commencement of this suit,—a period of nearly seventeen years. The court held: "The facts disclosed in the record make a complete case of estoppel in pais." In that case there was no doubt of the purpose of the inquiry or of the land to which it referred. The letter was practically equivalent to a quitclaim of the land.

I have carefully reexamined and reconsidered the decision in order to ascertain whether injustice may have been done, as claimed by the plaintiff, with the result that I am convinced that if a third trial were ordered and a verdict on this evidence obtained for the defendant it could not be sustained.