Williams, Judge,
delivered the opinion of the court:
The facts in this case are set forth in detail in the special findings of fact and it is not necessary that an extensive restatement of them be made in the opinion. Briefly summarized the material facts are:
Shortly after the passage of the act of May 15, 1928 (45 Stat. 534), an act for the control of floods on the Mississippi River and its tributaries, the City Council of Mound City, Illinois, made application to the Mississippi River Commission, created under the provisions of said act, for the improvement of the levee system previously constructed for the protection of that city against the flood waters of the Ohio River. The application of the city was .favorably acted upon by the Mississippi River Commission. The district engineer in charge wrote the mayor of Mound City informing him that the United States proposed to strengthen the Ohio River front levee at Mound City. He further informed the mayor that pursuant to section 6 of the Flood Control Act, the city would have to furnish free of cost to the United States all necessary rights-of-way for the contemplated improvements. Accompanying this letter was a sketch showing certain obstructions within the limits of the proposed levee enlargements, among which were the structures described in finding No. 15, owned by the plaintiff Bartlett, and located on lands in the lawful possession and control of the city.
The mayor of Mound City promptly wired the district engineer stating, “Arrangements have been made for the right-of-way and borrow pits for proposed work on Mound *175 City levee”, and on the following day wrote the district engineer requesting that, if found practicable, the shed on top and outside the present levee at the Bartlett hoop mill be left intact, and that Bartlett’s hamper plant be allowed to remain, but stated that if the government engineers found it was not practicable to allow these structures to remain along the levee, that “we have arranged for their removal.” On the same day the city council adopted resolutions in which provision was made for the city to pay Bartlett one percent (1%) of the annual pay roll of the hoop mill for the year 1928, to be applied to the expenses of moving such buildings as were required to be moved. The plaintiff was not paid by the city the amount authorized to. be paid to him m this resolution.
The contract for the levee improvement at Mound City was subsequently made and the work was completed in accordance with the terms of the contract and duly accepted by the United States. Before the inception of the levee work plaintiff was informed by defendant’s officers that certain of his buildings on the site of the levee would have to be demolished. In conversations between the plaintiff and the assistant engineer in charge of the work, the plaintiff agreed, (1) at his expense, to raise the log incline, designated “Structure H”, to levee grade, and if possible to keep his mill operating during construction; (2) at his expense, to have moved over to land side of levee the office building, structure I; (3) at his expense, to have structure J, the storage shed, stripped of all material of value to him, the remainder of the shed to be left for the Government contractor or anyone who might have use therefor; (4) at his expense, to have stripped of all machinery and other materials of value to him, mill sheds designated “Structures N, O, and P”, the remainder thereof to be left for the Government contractor or anyone else who might have use for them.
During the progress of the work the lumber storage shed, designated in finding No. 15 as “Structure J”, located wholly v?ithin the area occupied by the new embankment, was demolished under the direction of the government contractor.
*176 The group of connecting structures, constituting the' hamper plant, designated in the findings as “Structure N”, lying wholly within the area of the new embankment of the levee, was likewise demolished by or under the direction of the government contractor, as was the frame building, “Structure O.” Before these structures were demolished or the levee work had reached the premises, the plaintiff had removed from such structures all machinery, fittings, fixtures, manufactured goods, and other materials desired b.y him.
The United States never occupied or otherwise used the structures mentioned, or made use of any of their contents, or the materials of which they were constructed. Such materials in the buildings as may have had salvage value were removed from the premises by people residing in the locality.
The plaintiff, at the time the structures were demolished, had no lease from the city with respect to the lands on which they were located.
The question for decision is whether the United States impliedly promised to pay plaintiff the value of the structures demolished by its officers, as a taking of private property for public use. The question of the taking of a freehold is not present, as the plaintiff held no lease to the premises on which the buildings were located. The plaintiff occupied the premises by the sufferance of the city, subject to removal at any time upon reasonable notice. The facts further show that the United States never in any manner, occupied or used the structures involved, and made no use of the materials of which they were constructed. These facts rebut the implication of an agreement on the part of the United States to pay the plaintiff the value of such structures.
Moreover the plaintiff is estopped by his own conduct from asserting a claim against the Government for the value of the structures demolished by its officers. He knew months before the structures were demolished by the Government that they would have to' be removed from the levee right-of-way. The city council of Mound City had adopted resolutions in April 1929 providing for the payment in part of *177 the cost of the removal of such of plaintiff’s buildings as would have to be removed, and the plaintiff in May had agreed with the government engineer that he would remove all machinery and other materials of value from the buildings, “the remainder thereof to be left for the government contractor or anyone else who might have use for them.” Pursuant to this agreement the plaintiff' proceeded to remove from the buildings all machinery and other materials of value and had completed such removal before the levee work reached the premises on which the buildings were located. In these circumstances the officials of the government in charge of the work had a right to assume that the plaintiff acquiesced in the demolition of the buildings by them. He had in effect agreed that this might be done and made no protest while the work was going on. Had he not agreed that the officials of the Government might make such disposition of the buildings as they saw fit after he had removed the machinery and other articles of value therefrom, or if he had entered a protest at the time the actual work of demolition commenced, the officers of the Government no doubt would have taken the matter up with the proper officials of Mound City and required them to have the buildings removed free of cost to the Government. The plaintiff by his own agreement and conduct led the responsible officers of the Government to believe that he had elected not to remove the buildings in question from the premises on which they were located, and that he expected no compensation from the United States in respect to them. The law is well settled that one who by his language or conduct leads another to do what he would not otherwise have done, shall not subject such person to loss or injury by disappointing the expectations upon which he acted. Dickerson v. Golgrove, 100 U. S. 578; Ralston Purina Co. v. United States, 75 C. Cls. 525.
The plaintiff is not entitled to recover and the petition is therefore dismissed. It is so ordered.
Whalet, Judge; LittletoN, Jxidge; Green, Judge; and Booth, Chief Justice, concur.