**BRAND PLASTICS COMPANY,**
Plaintiff,

v.

**The DOW CHEMICAL COMPANY,**
Defendant.

Civ. No. 65–1725–WPG.

United States District Court
C. D. California.

May 17, 1967.

Lyon & Lyon, by Leonard S. Lyon, Jr., Roland N. Smoot and James W. Geriak, Los Angeles, Cal., Grant A. Brown, Arthur G. Gilkes, Chicago, Ill., for plaintiff.

Wood, Herron & Evans, by Edward B. Evans and Richard H. Evans, Cincinnati, Ohio, N. Jerome Rudy and W. D. Miller, Midland, Mich., Fulwider, Patton, Rieber, Lee & Utecht, by Robert W. Fulwider and William K. Rieber, Los Angeles, Cal., for defendant.

WILLIAM P. GRAY, District Judge.

The plaintiff in this action (Brand) seeks a declaratory judgment that patent No. 2,694,692, owned by the defendant (Dow), is invalid and that it has not been infringed by Brand. The patent involves a method whereby rubber and styrene are polymerized in the formation of a plastic material known as impact polystyrene. Dow has moved to strike from the complaint the allegation denying the validity of the patent, which motion has been briefed and argued and submitted to the court for decision. Such decision is now rendered in this memorandum.

Dow's contention is grounded upon the facts that J. L. McCurdy and two of his fellow scientists discovered and developed the process that formed the basis for the patent while they were in the course of their employment by Dow. On August 23, 1950, they signed the patent application, in which they asserted under oath that they believed themselves to be the first inventors of the process and that they did not believe it to have been in prior public use; they thereupon assigned to Dow all of their interests in the invention as set forth in the application.

Two days later, the application was filed by attorneys representing the Dow patent department, and, after the usual file wrapper was built up between such attorneys and the Patent Office, reflecting numerous rejections, amendments and cancellations of claims, a patent was issued to Dow on November 16, 1954.

In 1958, Dr. McCurdy left Dow, and in 1960 he became the principal organizer, half owner, and president of the plaintiff corporation. It is Dow's contention that the precise purpose for which Brand was formed was to manufacture impact polystyrene through utilization of the patented process, and that from the beginning it has acted pursuant to such purpose. Dow has accordingly counterclaimed against Brand, alleging patent infringement.

Dow insists that under the hereinabove stated facts, both Dr. McCurdy and Brand should be estopped to challenge the validity of the patent, and that allegations in the complaint purporting to raise such challenge should therefore be stricken. Dow urges, as controlling, the opinion by Chief Justice Taft, speaking for the Court in Westinghouse Electric & Manufacturing Co. v. Formica Insulation Co., 266 U.S. 342, 45 S.Ct. 117, 69 L.Ed. 316 (1924). The opinion expressed considerable respect for the rule announced in earlier cases by lower federal courts that " * * * an assignor of a patent right is estopped to attack the utility, novelty or validity of a patented invention which he has assigned or granted as against any one claiming the right under his assignment or grant. As to the rest of the world, the patent may have no efficacy and create no right of monopoly; but the assignor can not be heard to question the right of his assignee to exclude him from its use." (Page 349, 45 S.Ct. at page 119.) He thereupon likened estoppel in assignments of a patent right to estoppel in conveyances of land, and concluded that "If one lawfully conveys to another a patented right to exclude the public from the making, using and vending of an invention, fair dealing should prevent him

from derogating from the title he has assigned, just as it estops a grantor of a deed of land from impeaching the effect of his solemn act as against his grantee." (Page 350, 45 S.Ct. at page 120.)

The analogy thus expressed by Chief Justice Taft has the virtue of simplicity, but it was not applied in the matter that he was then considering, and it has not been very helpful in deciding the subsequent cases. In Scott Paper Co. v. Marcalus Mfg. Co., 326 U.S. 249, 66 S.Ct. 101, 90 L.Ed. 47 (1945), the Supreme Court refused to allow estoppel to prevent the assignor from defending an infringement suit on the ground that the claims of the very patent that he had assigned were based upon a prior patent that had expired. The opinion pointed out the public interest in the right of unrestricted exploitation of an expired patent, and asserted the following:

"It follows that the patent laws preclude the petitioner assignee from invoking the doctrine of estoppel, as a means of continuing as against respondent, his assignor, the benefit of an expired monopoly, and they preclude the assignor from estopping himself from enjoying rights which it is the policy of the patent laws to free from all restrictions. For no more than private contract can estoppel be the means of successfully avoiding the requirements of legislation enacted for the protection of a public interest. [Citing cases.] The interest in private good faith is not a universal touchstone which can be made the means of sacrificing a public interest secured by an appropriate exercise of the legislative power. The patent laws preclude us from saying that the patent assignment, which they authorize, operates to estop the assignor from asserting that which the patent laws prescribe, namely, that the invention of an expired patent is dedicated to the public, of which the assignor is a member." (Page 257, 66 S.Ct. at page 105.)

The opinion in Scott referred to " * * * the doctrine of estoppel by patent assignment as stated by the Formica case * * *", and said that "To whatever extent that doctrine may be deemed to have survived the Formica decision or to be restricted by it, we think that case is not controlling here."

In Katzinger Co. v. Chicago Metallic Manufacturing Co., 329 U.S. 394, 67 S.Ct. 416, 91 L.Ed. 374 (1947), the Supreme Court held that a licensee under a patent could not be estopped to deny the validity of such patent as a basis for challenging the legality of the price fixing provisions contained in the license agreement. In doing so, the Court drew support from its decision in Scott, referring to that case as follows:

"In thus emphasizing the necessity of protecting our competitive economy by keeping open the way for interested persons to challenge the validity of patents which might be shown to be invalid, the Court was but stating an often expressed policy that 'It is the public interest which is dominant in the patent system,' Mercoid Corp. v. Mid-Continent Investment Co., 320 U. S. 661, 665 [64 S.Ct. 268, 88 L.Ed. 376], and that the right to challenge 'is not only a private right to the individual, but it is founded on public policy, which is promoted by his making the defence, and contravened by his refusal to make it.' Pope Mfg. Co. v. Gormully, 144 U.S. 224, 235 [12 S.Ct. 632, 36 L.Ed. 414]." (Pages 400–401, 67 S.Ct. at page 420.

The United States Court of Appeals for the Ninth Circuit examined the Scott decision and concluded therefrom that the concept of " * * * estoppel to question the novelty of a patented device must now be considered a doctrine of very limited validity." Douglass v. United States Appliance Corp., 177 F.2d 98, 101 (9th Cir. 1949). A similar conclusion was reached in National Welding Equipment Co. v. Hammon Precision Equipment Co., 165 F.Supp. 788 (N.D. Cal.1958). That case was an infringement action brought by the assignee of the patent application against the company formed by its assignor, who had

been the plaintiff's employee at the time of the assignment. The court rejected the same contention of estoppel that is raised by the defendant here and, under the authority of *Scott,* stated the rule to be that "If a device is in the public domain, the superior public interest in its unrestricted use precludes the assignee from asserting a limited monopoly of the device by means of an estoppel growing out of the patentee's assignment." (Pages 791–792.)

In light of the foregoing, it seems clear that estoppel should not be invoked against an assignor of a patent application in the same automatic manner as is suggested in the doctrine of estoppel by deed. As the hereinabove discussed cases show, in many instances the original assignor of a patent application is the person best able to establish how his own discovery fails to meet the test of patentability. The public has an interest in his ability to make such showing, in order that a patent that is not worthy of protection may be so declared and the subject matter restored to the public domain where it belongs. Hycon Mfg. Co. v. H. Koch & Sons, 219 F.2d 353 (9th Cir. 1955); Tom Lockerbie, Inc. v. Fruhling, 207 F.Supp. 648 (E.D. Wis.1962).

However, the public has an equally great interest in supporting the principle " * * * that he who, by his language or conduct, leads another to do what he would not otherwise have done, shall not subject such person to loss or injury by disappointing the expectations upon which he acted." Dickerson v. Colgrove, 100 U.S. 578, 580, 25 L.Ed. 618 (1880). It is in furtherance of this public interest that the doctrine of equitable estoppel by conduct has been developed. The elements of such estoppel are stated in Nelson v. Chicago Mill & Lumber Corp., 76 F.2d 17, 21, 100 A.L.R. 87 (8th Cir. 1935), and are quoted with approval in James v. Nelson, 90 F.2d 910, 917–918 (9th Cir. 1937):

" ' * * * (1) Ignorance of the party claiming estoppel of the matter asserted; (2) silence concerning matter where there is a duty to speak amounting to misrepresentation or concealment of a material fact; (3) action by the party relying on the misrepresentation or concealment; and (4) damages resulting if the estoppel is denied.' "

If these elements were present in the case at hand, I would have considerable difficulty in concluding that the public interest in striking down invalid patents requires this court to allow the assignor of a patent to benefit from such unsavory conduct. However, no such dilemma is here presented, because the facts presently before the court indicate quite clearly that the necessary elements for equitable estoppel are lacking. The written employment agreement, under which Dr. McCurdy and his two colleagues were working for Dow, provided that the latter would be entitled to the full ownership of any inventions they might make. In accordance with the spirit of such contract, the three scientists disclosed fully to representatives of the Dow patent department the nature of what they had discovered with respect to the polymerization of rubber and styrene. The patent department investigated the prior art and came to the conclusion that it was "very close". One of the members of the patent department expressed the view that Dow's only hope of proving invention lay in making a particular argument that acknowledgedly was "none too strong," and doubt was expressed as to whether it could be made to stick. Nonetheless, the patent department determined to make the attempt, prepared the application, and submitted it to Dr. McCurdy and his co-inventors for signature. Dr. McCurdy signed the application and the accompanying oath in reliance upon recommendations made by the Dow patent department that the subject matter claimed in the application was patentable. Dr. McCurdy stated that he never made any recommendations concerning the scope of the claims during the prosecution of the application; that he did not review any of the references cited by the Patent Office

during prosecution of the application; and that the first knowledge he had of the scope of the claims that would be contained in the patent was when he saw the patent after it was issued.

Under these circumstances, there is no basis to invoke an equitable estoppel. If the patent is valid, Dow is entitled to all of the benefits thereof; if it is not, all who desire, including Dr. McCurdy and those in privity with him, are entitled to use the process therein concerned. Never having urged upon Dow a contention that his process did meet the requirements of a patentable invention, Dr. McCurdy would not be foreclosed from asserting now that it did not.

It follows that Brand is free to litigate its challenge of the patent, and the defendant's motion to strike portions of the complaint is accordingly denied.

As the parties hereto are well aware, the matter of the defendant's objections to certain of the plaintiff's interrogatories has been taken under submission by the court in the thought that the decision on the motion to strike might have some relevance thereto. The court will shortly rule on such objections by separate memorandum.