### SUTTON *et al* v. CONSOLIDATED APEX MIN. *Co. et al.*

1. Where the manager and superintendent of a mining company, who was also a stockholder and director, and as such took part in procuring loans, secured by mortgages on the property, and expended the money received in and about the property, without informing the mortgagees that he claimed a miner's lien on the property for his services, he is estopped from claiming that such lien is prior to the mortgages, since by failing to inform the mortgagees of his claim he represented to them and induced them to believe that he did not claim a lien therefor.

2. The claim that an estoppel is not available to plaintiff, because not pleaded, cannot be sustained where the trial court found facts pertaining to an estoppel, since, the appeal being from the judgment alone, which only brings up the findings, and not the evidence, it will be presumed that the finding was made on proper evidence, that the evidence was properly admitted, and that the pleadings were amended to correspond with the facts proven.

3. Laws 1895, Chap. 134, amending Comp. Laws, § 2039, declares that every person furnishing materials for timbering mine shafts, or for erecting hoisting machinery, or for car tracks, cars, etc., shall have a first lien on the mine or improvement for the amount thereof. Comp. Laws, § 5469, provides that every person furnishing materials, machinery or fixtures for any building, erection, or any improvement on land shall have a lien on the building and land therefor. *Held*, that a claimant who furnished powder, fuse, steel, and tools to a mining

company, to be used in the development and repair of the property, was not entitled to a lien therefor under either of the foregoing statutes, where it did not appear that such materials were used in the construction of some specific building, erection, or improvement, and the only finding with regard to the use of the material was that it was used in the development, repair and improvement of the property.

(Opinion filed November 21, 1900.)

Appeal from circuit court, Pennington county. Hon Levi McGee, Judge.

Action by George A. Sutton and others against the Consolidated Apex Mining Company and others to foreclose certain mortgages. From a judgment giving certain liens priority over the mortgages, plaintiffs appeal. Reversed.

The facts are stated in the opinion.

*Fowler, Cull & Whitfield,* for appellants.

When a person having a lien upon specific property makes such representation as to induce another to purchase the premises, believing that the lienor does not look to the lien but to other means for his payment, the principles of waiver and estoppel will both apply to prevent the claimant from setting up his right of lien to the injury of the purchaser. Meland on Mech. Liens, § 146; Scott v. Orbison, 21 Ark. 202; Alexander v. Slaven, 7 B. Mon. 356; Dodd v. Barnes, 4 Gill, 1; Trowbridge v. Matthews, 28 Wis. 656.

A mere general agreement to pay for goods or labor thereafter furnished or performed is not an entire contract and will not entitle the claimant to a lien. Wright v. Livermore, 33 Mo. 31; Spencer v. Barnett, 35 N. J. 94; Neeland on Mech. Liens, § 175; Cholean v. Thompson, 2 O. St. 114.

A person employed by the month or year to perform work generally is not entitled to a lien. Neeland on Mech. Liens, 19; Coats v. Shorey, 8 Ia. 416; Bennett v. Shackelford, 11 Allen, 445; Mc-

Cormack v. Water Co., 40 Cal. 185; Jones on Leins, § 157.

The party claiming a lien must not include in his account any items for which a lien does not attach. Jones on Liens, § 1323; Kezarter v. Marks, 16 Pac. 412; Williams v. Toledo, 36 Pac. 159; Davis v. Aloord, 94 U. S. 545; Bernard v. McKinzie, 4 Colo, 251.

A party claiming a lien for labor or for materials furnished must show that the labor was upon or the materials furnished for the premises upon which the lien is sought. Patterson v. Gallegher, 35 Pac. 454; Roebling v. Bear, 34 Pac. 80; Colorado v. Railroad, 43 Pac. 681; Cook v. Ross, 23 S. E. 252; Patum v. Smith, 6 Pac. 715; Railroad v. Matthews, 12 S. W. 976; Oil Co. v. Lane, 75 Wis, 636; Industrial Co. v. Supply Co., 58 Fed. 732; Caldwell v. Brackett, 26 Pac. 219; Whittaker v. Loan Co., 30 Pac. 1094; Van Etten v. Cook, 16 S. W. 477; Mitchell v. Packard, 47 N. E. 113.

· *Charles W. Brown, Chauncey L. Wood* and *Charles J. Buell,* for respondents.

The facts from which an estoppel *in pais* arises, to be available as such, must be pleaded; at least, when there is an opportunity so to plead. Henderson v. Kentzer, 76 N. W. 881; Rathway v. Harris,·8 Neb. 140; City v. Slartzman, 3 N. E. 937; Elkenberry v. Edwards, 24 N. W. 570; Ransom v. Stanberry, 22 Ia. 336; Phillips v. Van Schaick, 37 Ia. 230.

The mechanics lien law is remedial in its nature and should be liberally construed towards sustainig the lien. Pinkerton v. LeBeau, 3 S. D. 440; Hill v. Alliance, 6 S. D. 160; Kehoe v. Hansen, 8 S. D. 200; Sheffield v. Withrow, 149 U. S. 574.

CORSON, J.   This is an action to foreclose a mortgage upon the property of the Consolidated Apex Mining Company. The plaintiffs were the owners of the first mortgage and bonds for $25,000, and the

defendant, Henry L. Evans, was the owner of the second mortgage and bonds for $25,000. The G. S. Congdon Hardware Company and John J. Farrer claimed miners' and mechanics' liens upon the property. These liens were adjudged by the court to have priority over the two mortgages. Hence the parties holding these mortgages have appealed to this court. The case was before this court recently on a motion to dismiss the appeal, and the facts are quite fully stated in the opinion denying the motion. The opinion in that case is reported in 12 S. D. 576, 82 N. W. 188. The findings of fact in the case are quite voluminous, and we only deem it necessary to incorporate in this opinion such portions as bear more directly upon the questions to be considered. It was found by the court that the first mortgage was executed on the 2nd day of January, 1896, and contained full covenants of warranty, and that the second mortgage was executed on the 12th day of January, 1897; that from the time of the organization of the Apex Mining Company, in 1894, until the 6th day of February, 1896, the said company was in the possession of all the real estate mortgaged, under the claim of ownership, and thereafter acquired the fee-simple title thereto; that from the organization of said company in October, 1894, to the 22d day of May, 1897, the said defendant Farrer was manager and superintendent thereof, superintending and managing all of its operations, and, in the discharge of his duties as such superintendent, necessarily performed a large amount of manual labor, and the moneys received from the sale of said mortgage bonds hereinbefore mentioned were expended by him and under his direction in the development and improvement of the mortgaged premises, in the payment of its debts, and upon the purchase price of said property; that the fair and reasonable value of the services rendered by said defendant Farrar to the defendant mining company is $1,447, upon which indebtedness the mining company

has paid to said Farrar the sum of $591, leaving a balance due upon said account in the sum of $856, with interest from May 27, 1897, at the rate of 7 per cent. per annum amounting to the sum of $71.14, making a total of $927.14; that the business and affairs of the defendant mining company were from the time of its organization in 1894 continuously managed by a board of seven directors, and that the defendant John J. Farrar was during all of said period of time a stockholder and one of the directors of said company, and until May 22, 1897, was its manager, superintendent, and foreman; that the moneys received from the sale of the mortgage bonds described in the findings of fact, and owned by the plaintiffs and appellant Henry L. Evans, were expended by and under the direction of said John J. Farrar in the development and improvement of said mortgaged premises, and in the payment of the purchase price thereof; that at a meting of the board of directors of said mining company held on the 12th day of January, 1897, at which was present, among others, John J. Farrar, a resolution was unanimously passed by said board of directors authorizing the borrowing of the sum of $25,000, and under and by virtue of which resolution the sum of $25,000 was loaned to said defendant company, and a trust deed made to secure the same, which constitutes what is known as the second mortgage, held by Henry L. Evans; that said Farrar within 60 days from the time of ceasing work for the defendant mining company, to-wit, on the 16th day of June, 1897, filed for record in the proper office a notice of his claim, duly verified, as provided by law, and on the 16th day of September, 1897, he assigned the same to the Pennington County Bank as collateral security for the payment of $1,000. The court further finds that between the 1st day of June, 1893, and January 6, 1897, the G. S. Congdon Hardware Company sold and delivered to the defendant the Consolidated Apex Mining Company

and its predecessors in interest goods, wares, and merchandise of the value of $2,390.53; that between April 20, 1896, and November 1, 1896, said mining company paid to said hardware company on account of said merchandise the sum of $1,185.64; that all of said merchandise so sold and delivered by the hardware company to the Consolidated Apex Mining Company and its predecessors in interest were mining supplies, consisting principally of powder, fuse, steel, and tools, excepting $124.97, and said merchandise was during said respective years used on said mortgaged premises, and in the development and repair of the same, in its mining operations; that on or about June 22, 1897, said hardware company, for the purpose of securing and perfecting a lien for the money due it from said mining company, under the provisions of chapter 31 of the Code of Civil Procedure of this state (sections 5468-5495, Comp. Laws), filed in the proper office its account aforesaid, and a notice, duly verified, by which it claimed a mechanic's lien upon all the aforesaid premises for the sum of $1,202.97, with interest from June 22, 1897. The court concludes as a matter of law, that the defendant Pennington county has a first lien against the property for all taxes due and unpaid thereon; that the defendant Pennington County Bank has a second lien for the sum of $927.14, on account of the amount due said Farrar and assigned to said bank; that the defendant G. S. Congdon Hardware Company has a third lien upon the property for the sum of $1,164, on account of the mechanic's lien of said company; that the plaintiffs George A. Sutton *et al.* have a valid subsisting lien, subject to the foregoing liens, for the sum of $29,121.47, on account of the amount found due them on the first mortgage, gold, coupon bonds, and the interest notes attached thereto; and that the defendant Henry L. Evans has a valid and subsisting lien, subject to the liens above specified, for the sum of $28,371.25, upon all of the said mort-

gaged premises on account of the amount found due on his second, mortgage, gold coupon bonds, and interest notes attached thereto.

It is contended on the part of the appellants that John J. Farrar is estopped from claiming any lien upon the mortgaged premises, as against the first and second mortgages, for the reason that as a stockholder, director, and manager of said company, he took a direct part in procuring said loans, and expended the money received from the same without in any manner informing the parties making the loans that he had or claimed a miner's lien upon the premises; that, in effect, by failing to make known to the parties making the loans that he had or claimed any such lien, he represented to them, and induced them to believe, and act upon the belief, that he neither had nor claimed any such lien. Assuming that, as superintendent of the mining company, he might have a lien upon the mining property of the Consolidated Apex Mining Company, under the findings in this case, still we are of the opinion that, in view of the relations he sustained to said company at the time the loans were made, he cannot, in equity and good conscience, set up such lien as against the mortgages in this case. Being a stockholder, director, managing agent, and superintendent of said company, if he intended to claim a lien upon the property it was his duty to have so notified the parties at the time the loans were made, in order that they might have protected themselves against such lien. In Bigelow, on estoppel, after discussing at some length the leading case of Pickard v. Sears, 6 Adol. & E. 469, the author says: "The rule is stated to be that when one by his words or conduct wilfully causes another to believe the existence of a certain state of things, and induces him to act on that belief so as to alter his present position, the former is concluded from averring against the latter a different state of things as existing at the same time." Bigelow, Estop. p. 560. The supreme court of the United States has

modified this rule to some extent, using the following language: "The vital principle is that he who by his language or conduct leads another to do what he would not otherwise have done shall not subject such persons to loss or injury by disappointing the expectations upon which he acted. Such a change of position· is strictly forbidden." Dickerson v. Colgrove, 100 U. S. 578, 25 L. Ed. 618; Tollerton & Stetson Co. v. Casperson, 7 S. D. 206, 63 N. W. 908. We think that the facts found in regard to Farrar's connection with the company clearly bring him within the rule in the cases above cited. Good faith and fair dealing required Farrar to make known to the parties making the loans that he claimed a miner's lien upon the property, and by his failure to do so he, in effect, at least, represented to those parties that he neither had nor claimed such lien. He is, therefore, in equity and good conscience, estopped from now claiming any lien as against these mortgages.

It is contended on the part of the respondents that this estoppel is not available to the appellants for the reason that they did not plead it, and that an estoppel, to be available to a party, must be pleaded. This is probably true, as a general rule, when the party has an opportunity to plead such an estoppel; but, as the court in this case has found facts pertaining to an estoppel on the part of Farrar, we must presume that the finding was made upon sufficient evidence, and that the evidence was properly admitted, and, if necessary, that the pleadings were amended to correspond with the facts proven, as the appeal is from the judgment alone, which only brings up the findings, and not the evidence. If these views are correct— and we believe they are—the conclusion of the court that the lien of Farrar was superior and paramount to the lien of the two mortgages was clearly incorrect, and it should have concluded, as matter of law, that the liens of the mortgages were superior and paramount to the alleged miner's lien of said Farrar.

It is further contended on the part of the appellants that under the findings of fact in this case the G. S. Congdon Hardware Company was not entitled to any lien as against the appellant's mortgages. It will be observed that the court finds that from June 1893, to November, 1896, the hardware company sold and delivered to the Consolidated Apex Mining Company and its predecessors in interest goods, wares and merchandise of the value of $2,390.53, and that the said mining company paid to the hardware company the sum of $1,185.64; that all of said merchandise sold and delivered to said company were mining supplies, consisting principally of powder, fuse, steel and tools, and that said merchandise was during said respective years used on said mortgaged premises, and in the development, improvement, and repair of the same in its mining operations. It is quite clear that the merchandise delivered does not come within the act relating to mineral liens contained in chapter 134, laws 1895, which purports to be an amendment of section 2039, Comp. laws. That section provides that "every miner or other person who * * * shall perform any labor whatever upon said mine * * * or furnish any timber, rope, nails or any other materials for timbering shafts or levels for the mine owned by such owner or owners, or who shall furnish any kind of material for erecting any windlass or any other hoisting apparatus or machinery, or for any car tracks, cars, tunnels, drifts or openings thereon, or shall perform any labor in any tunnel or other mining works, shall have a first lien * * * upon such mine, * * * work or improvement made in connection with the workings of any mine, to secure payment of said labor or said material." It will be noticed in this section that neither powder, fuse, steel, nor tools is mentioned. Section 2039, Comp. Laws, which is amended and which was in force during a portion of the time when the goods were sold and delivered,

is substantially the same as respects the materials for the furnishing of which the lien is given. It will thus be seen that no lien can be claimed by the hardware company under either of these sections. Section 5469, Comp. Laws, provides that "every mechanic or other person who shall do any labor or furnish any materials, machinery or fixtures for any building, erection or other improvement upon land, * * * by virtue of any contract with the owner, his agent, trustee, contractor or subcontractor, upon complying with the provisions of this chapter, shall have for his labor done, or materials, machinery or fixtures furnished, a lien upon such building, erection or improvement and upon the land belonging to such owner, on which the same is situated, to secure the payment of such labor done or materials, machinery or fixtures furnished." It will thus be seen that this section provides only for labor done upon, or materials, machinery, or fixtures furnished for, any building, erection or other improvement, and that the lien acquired is upon the building, erection, or improvement, including the land upon which the same is situated. It cannot, therefore, be reasonably claimed that the merchandise furnished by the hardware company to the Consolidated Apex Mining Company and its predecesors, consisting principally of powder, fuse steel and tools, was furnished for the erection of any particular building or other improvement upon the mine. The court does not find that it was so furnished. It simply finds that said merchandise was used on said mortgaged premises, and in the development, improvement and repair of the same in its mining operations. The mortgaged premises included seven mining claims, a mill site on Little Rapid creek, a 60-stamp quartz mill on said site, and water rights on Little Rapid creek. While this court has repeatedly held that the miners' and mechanics' liens law should be liberally construed in favor of mechanics, miners and material men, yet we cannot extend

the law to make it include a case not clearly within its provisions. By no reasonable construction, therefore, can the court hold merchandise sold generally to a mining company to constitute a lien upon the property of such company. It would be giving to the law a construction entirely unwarranted to hold that a company furnishing powder, fuse, steel and tools to a mining company, generally, shall have a lien upon the mine, mills, and other improvements, for the merchandise so furnished. To entitle a party to such a lien, the goods, must have been furnished and used in the construction of some specific building, erection or improvement; but the finding is that they were used "on said mortgaged premises, and in the development, improvement and repair of the same, in its mining operations." It is quite clear, therefore, that the learned circuit court was in error in concluding, as matter of law, that the G. S. Congdon Hardware company had a lien upon said mortgaged property superior and paramount to the lien of the appellants under their two mortgages. The judgment of the circuit court is, therefore, reversed as to the defendants, John J. Farrar, the Pennington County Bank, and the G. S. Congdon Hardware Company, and that court is directed to amend the judgment by striking out the following: "That the receiver pay to the said defendant, the Pennington County Bank, said sum of $927.14, with interest thereon from August 1, 1898, at the rate of seven per cent per annum—being the amount found due by reason of the miner's lien of the said defendant John J. Farrar, and the assignment thereof to the said Pennington County Bank—and that the receiver next pay out of the proceeds of said sale the sum of $1,164, with interest thereon at the rate of seven per cent per annum from August 1, 1898, to the defendant, the G. S. Congdon Hardware company; that after paying said sums"—and by inserting after the words, "being the amount found and adjudged to

be due the said Henry L. Evans by the court upon his said second mortgage bonds and second mortgage upon the said premises,"the folowing: "and that he pay said defendant, the Pennington County Bank, said sum of $927.14, with interest thereon from August 1, 1898, at the rate of seven per cent per annum, being the amount found due by reason of the miner's lien of said defendant John J. Farrar, and the assignment thereof to the said Pennington County Bank"—and that said judgment be further amended by adding the words, "and the G. S. Congdon Hardware Company," after the words, "Ansel E. Gammon and John J. Farrar,"that the G. S. Congdon Hardware Company may be included among the parties having judgment liens upon the property.