SUTTON *et al.* v. CONSOLIDATED APEX MIN. CO. *et al.*

1.  The manager and superintendent of a mining company, who was also a stockholder and director, and who as such took part in procuring loans secured by mortgages on the property, and expended the money received in and about the same without informing the mortgagees that he claimed a miner's lien for his services, could not be estopped from asserting that such lien was prior to the mortgages, where it did not affirmatively appear that the mortgagees were in any manner misled to their prejudice by his conduct.

2.  A contention that the amendment to the miner's lien law made in 1895 (Laws 1895, Chap. 134) impaired the obligation of certain mortgage contracts, because by its terms it postponed the mortgage liens to a miner's lien filed after the mortgages were recorded, was bad, where it appeared that the party asserting the miner's lien commenced work for the company long prior to the execution of the mortgages, his lien dating from the time he was first employed.

(Opinion filed March 1, 1902.)

Appeal from circuit court, Pennington county.  HON. LEVI McGEE, Judge.

This case was first decided by this court in an opinion reported in 14 S. D. 33, 84 N. W. 211.  In that opinion the judgment of the trial court giving certain liens priority over the  mortgages was reversed.  A rehearing was subsequently granted and this opinion is upon the rehearing.  The former judgment affirmed in part and reversed in part.

*Fowler, Cull* and *Whitfield,* for appellants.

*Charles W. Brown, Chauncey L. Wood* and *Charles J. Buell,* for respondents.

CORSON, J.  This case was decided at a former term of this court, and reported in 14 S. D. 33, 84 N. W. 211.  A petition for rehearing was granted, and the case is now before us on such re-

hearing. Upon the reconsideration of the opinion, we have ar-
rived at the conclusion that the court erred in that portion of the
opinion in which it says, "We think the facts found in regard to
Farrar's connection with the company clearly brings him within the
rule in the cases above cited. * * * He is therefore, in equity
and good conscience, estopped from now claiming any lien as
against these mortgagees." Upon a review of the findings there
seems to be no specific finding that the mortgagees, or either of them,
were in any manner misled to their prejudice by the conduct or acts
of Farrar, or that they were induced or led to do what they other-
wise would not have done except for his conduct and acts. In
order to constitute an estoppel it is not sufficient to show that the
language, acts, or conduct of one might have misled a party to his
prejudice; but it must affirmatively appear that such party was in
fact misled or induced by such acts, conduct, or language to do some-
thing that he would not otherwise have done except for such acts,
language, or conduct, and that he would be injured and sustain loss
by allowing the party to show the existence of a different state of
facts than those represented. This is the rule recognized by this
court in Tolerton & Stetson Co. v. Casperson, 7 S. D. 206, 63
N. W. 908. In that case the defendant sought to defeat an at-
tachment proceeding which he had encouraged the plaintiff to take,
and the plaintiff insisted that he was therefore estopped from ques-
tioning the proceeding. It was affirmatively shown in that case that
the attachment proceeding would never have been taken had not the
agent of the plaintiff fully relied upon the statements of the defend-
ant to him. This seems to have been the view taken by the courts
in the cases cited by appellants in the case at bar. In Hinchley v.
Greany, 118 Mass. 595, the supreme court of Massachusetts says
"that when a party wilfully misrepresents a fact to another, and

on the strength of such false representation he is induced to alter his position, the former is precluded from setting up that the representation was not true." And the court in that case cites, among others, Bank v. Buffinton, 97 Mass, 498. In that case the action was on promissory notes, and the defendant attempted to defeat the action on the ground that his purported signature as an indorser was forged, but it was shown that he had represented to the cashier of the bank that his signature was genuine, and the bank, relying upon that representation, had neglected to take action against the other parties to the notes. Upon this state of facts the court charged the jury as follows: "That if, upon all the evidence in the case, they should be satisfied that the defendant made the representation and statement or acknowledgment aforesaid, knowing it to be untrue, and with intent to mislead or induce the plaintiffs to act upon it, and that the plaintiffs did rely and act upon it, and were injured thereby, the defendant would be estopped from showing that his name on the back of said notes was not his genuine signature, and that it was not put there by him or by his authority." This instruction was held to be correct. It will be noticed that in that case it was affirmatively shown that the bank, through its cashier, relied upon the representation of the defendant that his signature was genuine, and consequently neglected to take the proper steps to hold the other parties to the notes. In the case of Trow-bridge v. Mathews, 28 Wis. 656, cited by appellants, the supreme court of Wisconsin recognizes a similar rule. In that case the plaintiff sought to enforce a mechanic's lien against the property, which had been purchased by defendant Mathews of one Jackson, and in his answer he set up as a defense that after the demand of the plaintiff had accrued, and before he paid over the money to Jackson, the plaintiffs, with fraudulent intent to injure the defendant,

represented to him that Jackson was not indebted to them, or at most only a few dollars, and that, relying upon such representations, he immediately completed the purchase of the property, and paid Jackson the unpaid purchase money therefor, amounting to between $4,000 and $5,000, which, but for the false representation made by the plaintiff, he would not have done. The trial court ruled out much of the evidence tending to prove this defense, and the court held this was error, and held, in effect, that the answer, if established by the evidence, would have constituted a good defense to the action. It will be noticed that in this case also it was affirmatively stated in the answer that the defendant relied upon the representation made by the plaintiffs, and would not have paid over the money to Jackson but for such representation. In the case of Kent v. Mining Co., 78 N. Y. 159, and in the case of McGraw v. Bayard, 96 Ill. 146, cited by appellants, the facts are so complicated that it is somewhat difficult to determine the exact points decided by the court, and we shall not attempt to review them. In the absence, therefore, of any finding that the mortgagees relied upon the acts or conduct of Farrar, and were led or induced by such acts or conduct to do what they would otherwise not have done, Farrar was not estopped from enforcing his mechanic's lien against the mortgages. Voting for and obtaining the loans and expending the money obtained as such loans, and acting as managing agent and superintendent of the corporation, would not alone be sufficient to estop him from asserting his lien.

It is further contended by the appellant that the amendment to the miner's lien law, made in 1895, impairs the obligation of the mortgage contract, for by its terms it would postpone the lien of the mortgages to a miner's lien which was filed more than one year after the first mortgage was recorded, and four months after the

second mortgage was recorded. But the finding of the court is that the defendant Farrar commenced work for the Consolidated Apex Mining Company on October 24, 1894, long prior to the execution of either of the two mortgages, and his lien would date from the time he was first employed by the company. Under this view, it is not necessary for us to pass upon the questions of validity or invalidity of the amendments as found in chapter 134, Laws 1895. The finding of the court that the said Farrar, as superintendent, "necessarily performed a large amount of manual labor" upon said mine, was evidently made with the view to bring the case within the law as laid down in Mining Co. v. Cullins, 104 U. S. 176, 26 L. Ed. 704. In that case the supreme court of the United States held that a person hired by the owner of the mine to oversee the miners, and generally to control and direct its workings, and do in the performance of his duties some manual labor, was entitled to a lien upon the mines, conferred by the laws of Utah territory. Section 2793, Comp. Laws of the territory referred to, is substantially the same as the law relating to that subject in this state. We are of the opinion that, under the findings of the court in this case the judgment of Farrar and the Pennington County Bank should be affirmed. The court is also of the opinion that, in consideration of the fact that the court below seems to have taken the view that the goods, wares and merchandise furnished to the Consolidated Apex Mining Company constituted a lien upon the property of that company, and that it was not necessary to determine precisely what goods, wares, and merchandise were used in the construction of any particular building, shaft, or tunnel, in order to bind the mining company, it is proper that a new trial should be granted to the Congdon Hardware Company to enable it to show, if it can, what part, and how much, of the goods, wares, and merchandise, if any, were

·furnished for and used in any specific building, shaft, or tunnel, designated in the statute.

The contention of the counsel for the respondents that the assignments of error are insufficient to enable the court to review the questions presented on the ·appeal in this case is untenable. We are of the opinion that the assignments of error are sufficient to enable the counsel and court to understand what errors are relied on for a reversal of the case.

So much of the opinion as directs a modification of the judgment ·appealed from is disaffirmed, and the judgment of the circuit court as to defendant John J. Farrar and the Pennington County Bank is affirmed, and the judgment, so far as it affects the Congdon Hardware Company, is reversed, and a new trial as to that company is ordered.