## JONES v. SUBERA et al.

Unless there is a clear preponderance against findings of the lower court, they will be sustained.

A person who not only failed to give to an executor, legatees, or the court any notice that he claimed a fund in the hands of the executor as a trust fund, but repeatedly disclaimed any right to the fund until after the proceedings in the county court were concluded, is estopped to thereafter claim the fund as a trust fund.

In an equitable estoppel, a party is forbidden to set up his legal title, because he has so conducted himself that to do so would be contrary to equity and good conscience.

Code Civ. Proc. § 486, subd. 2, provides that in an action by or against a personal representative or heirs at law or next of kin, neither party shall testify to any transaction with decedent. Plaintiff sought to prove that he was the owner of certain tracts of land, sold by decedent in his lifetime, and the consideration never paid over to plaintiff. It appeared, however, that the tracts stood in the name of decedent, and that he disposed of the same. Plaintiff was asked whether the tracts had been conveyed to him by decedent, and whether he had had in his possession unrecorded deeds for the same. Held, that an objection, on the ground that it tended to prove a transaction with decedent, was properly sustained.

An action against one who had been discharged as executor, and the legatees to whom the estate had been distributed, wherein it

was alleged that such executor took possession of the property, caused an inventory to be made, and that the inventory amounted to a designated sum, was an action against an executor and legatees within Rev. Code Civ. Proc. § 486, subd. 2, forbidding a party to such an action to testify as to a transaction with decedent.

Error, if any, in excluding evidence is not reversible, where the findings would still be based upon a sufficient failure of proof.

(Opinion filed, March 23, 1910.)

Appeal from Circuit Court, Minnehaha County. Hon. Joseph W. Jones, Judge.

Action by Isaac S. Jones against Harry W. Subera and others. From a judgment for defendants and an order denying a new trial, plaintiff appeals. Affirmed.

*Hall, Roddle & Purdy,* for appellant. *Keith & Keith* and *Bates & Parliman,* for respondents.

CORSON, J. This case comes before the court upon an appeal from the judgment in favor of the defendants, and from an order denying a motion for a new trial. In the complaint the plaintiff alleges that he is and was the owner, at all of the times therein mentioned, of certain moneys and securities which were the proceeds of the sale of certain tracts of real estate belonging to him, and rents and profits accruing therefrom, which moneys and securities came into the possession of his brother W. S. Jones, now deceased, while the latter was acting as attorney in fact and confidential agent for the plaintiff. The case was tried to the court without a jury and the court finds in effect the following facts:

That the plaintiff and W. S. Jones were brothers, and on the 3d day of October, 1902, the said W. S. Jones died at the city of Sioux Falls, leaving a last will and testament of real and personal property, and appointed the defendant Harry W. Subera as executor of said will; that said will was duly admitted to probate on the 24th day of November, 1902; that soon thereafter the said defendant Subera duly qualified as such executor, and entered upon the discharge of his duties as such; that the devisees and legatees named in said will, and the bequests given to each, are as follows: To Nellie B. Jones, $10,000; to Lewis Jones, $1,000; to Ezma R. Jones, $500; to Charles H. Vincent, $500; to C.

Vincent Leavitt, $500. The court then proceeds to set out the various proceedings of the county court resulting in the final distribution of said estate by order of the court on the 23d day of December, 1905, at which time the said court rendered a final decree and distribution of said estate, and that pursuant to said order of distribution the defendant Subera, as executor, paid all of the bequests remaining unpaid, and performed all the duties which he was by law required to perform as such executor, and duly made his return to said court of all things done by him pursuant to said order of distribution, and that the said court duly granted to said Subera, as executor aforesaid, his discharge as such executor, and released his sureties in said estate.

The court further finds that the plaintiff contested the last will and testament of W. S. Jones, deceased, and · claimed the property of which the said W. S. Jones died seised under a former will, being the same property that was distributed by · the said defendant Subera, as executor of said will, under the direction of the county court, and also the same property· which the plaintiff seeks to recover in this action as trust funds held by the said W. S. Jones at the time of his death; that on the 18th day of February, 1905, the day fixed by said county court for hearing the petition · filed by the said Subera as executor, known as the third term report, the plaintiff appeared by counsel, and consented to the items of account which had been paid by the said executor, as shown by his said third · term report, and also that an order approving the same be made; that the plaintiff appeared in said county court and took part in the probate of the estate of the said deceased from its inception, and was conversant with the steps taken and had in said matter, and knew what property was being administered by the executor under the direction of the court, and never at any time claimed the property was his by virtue of any trust relation existing between himself and his deceased brother, or otherwise, and never made any objection to the distribution of said property under said will by said executor to the various heirs, devisees and legatees therein named; that it appears from

the testimony that in the year 1897 the plaintiff gave to the deceased a power of attorney, general in form, but the same was never filed or recorded, and also on the 12th day of May, 1900, the plaintiff gave to the deceased another power of attorney, which said power of attorney was never filed or recorded; that in the month of May or June, 1902, and prior to the death of the deceased, all business matters between the said plaintiff and the deceased were terminated and ended, and the said powers of attorney were revoked and taken up by the said plainitff; that at the time of the death of the deceased he held no money or property of any kind or description, set forth in the complaint herein, in trust for the plaintiff; that the allegations of the first, second, and third paragraphs of the complaint (which allege that the various sums therein specified were wrongfully converted and held by the executor and Nellie B. Jones as trust funds) were not proven; that the plaintiff made no claim that he was creditor of said estate, and never filed any statement of his claim with the executor pursuant to the notice given to creditors, or otherwise; that none of the properties or moneys of which the said W. S. Jones died seised or that the plaintiff claims as trust funds, described in the complaint in this action, was traced into the hands of the defendant Edgar L. Smith; and "that all the material allegations of the defendants' answer are true."

The court from these findings concludes: "That the defendants, nor either of them, are indebted to the plaintiff in any sum whatever; that all the money and property that was distributed by the defendant Harry W. Subera as executor of the last will and testament of Wilson S. Jones, deceased, under and by direction of the county court of Minnehaha county, S. D., was the property and money of Wilson S. Jones at the time of his death, and that plaintiff Isaac S. Jones had no interest therein; that the plaintiff Isaac S. Jones is estopped from claiming any of the money or property that was distributed by the defendant Harry W. Subera as executor of said last will of Wilson S. Jones, deceased, by reason of his conduct and acquiescence in the administration of said estate and distribution thereof; that the plaintiff, Isaac S. Jones, and his brother, Wilson S. Jones, in his lifetime and some

time prior to his death, had a full and complete settlement of all business matters between them, and the same were terminated and ended, at which time the powers of attorney mentioned in the findings of fact herein were revoked, and that the business for which said powers of attorney were given had been consummated and ended between the parties; that the plaintiff's complaint herein should be dismissed on the merits, with costs to each of the defendants who have served separate answers herein." Upon these conclusions a judgment was entered in conformity therewith. Presumptively the findings of the court are correct. Unless there is a clear preponderance of the evidence against such findings, they will be sustained by this court. After a careful examination of the evidence in this case we are unable to say that there was a preponderance of evidence against the findings of the court, and are inclined to the opinion that the court's findings are fully sustained by the evidence.

The evidence is very voluminous and we shall only refer to such parts of it as we deem material in the determination of this case. The transactions between W. S. Jones, deceased, and the plaintiff, resulting in the execution of the deeds to the real estate by the deceased to the plaintiff, are very fully stated in the case of Jones v. Jones, 20 S. D. 632, 108 N. W. 23, and therefore need not be repeated in this opinion.

It does not affirmatively appear from the evidence in this case that the deceased, W. S. Jones, conveyed any of the real estate that he had conveyed to the plaintiff under the powers of attorney executed by the plaintiff to him, but it does affirmatively appear from the evidence that the said W. S. Jones, after the execution of the deeds of the real estate to his brother, the plaintiff, managed and controlled the property up to the time of his death, paid off mortgages and other debts, and sold and disposed of property, the title of which still remained in him. And it does not affirmatively appear from the evidence that any of the proceeds of the properties conveyed by him to the plaintiff, received by him, constituted any part of the funds involved in this action. A considerable portion of appellant's brief is devoted to establishing the doctrine that trust funds may be followed and recovered

in the hands of any person to whom they have been transferred, who are not bona fide holders of the property or proceeds for value, and without notice of the trust. This doctrine was fully recognized by this court in the case of Farmers' & Traders' Bank v. Kimball Milling Co., 1 S. D. 388, 47 N. W. 402, in which this court held that the owner of the trust fund could follow his property and preserve his real ownership into the different forms it might have been changed or transmuted, even into the hands of third parties, so long as the property or funds into which it had been converted could be traced until it went into the hands of an innocent purchaser for value and without notice. But in the case at bar the plaintiff failed to trace the funds received by W. S. Jones on account of any real estate that had been transferred by the said W. S. Jones to the plaintiff as constituting a part of the funds in controversy in this action, and hence the rule stated does not apply to this case. It appears from the evidence that W. S. Jones, deceased, disposed of various tracts of land the title of which still remained in him, and he received therefor large sums that belonged to him individually, and it appears from the evidence that he had paid a large amount on mortgages outstanding against the property conveyed by him to the plaintiff, and for taxes, improvements, and expenses. Neither the trial court nor this court can therefore say that any part of the funds received by him under his powers of attorney was included in the fund involved in this action.

But, assuming that all or a part of the fund involved in this action was in fact trust funds received by the said W. S. Jones under the powers of attorney, belonging in fact to the plaintiff, we are of the opinion that the court properly found, under the evidence, that the plaintiff was estopped from claiming the same in this action. It appears from the evidence that in 1894 the deceased executed a will in which, after making a few small bequests, he bequeathed and devised the residue of his property to the plaintiff, and appointed him as executor; that subsequently in 1902 the deceased executed a second will, bequeathing and devising his property to other parties, among whom were Nellie B. Jones, his son, and daughter, and small bequests to other parties, and the

defendant Subera was appointed executor of his said will; that in the fall of 1902 the latter will was filed in the county court, and proceedings instituted thereunder; that thereupon the plaintiff contested the said last will, and filed in the probate court the former will, with a petition setting forth that the last will was invalid for certain reasons, among which were that the deceased, at the time he executed the last will, was of unsound mind, and that he was induced by duress, menace, and fraud or undue influence to execute the same, and asked "that the said pretended last will and testament, and the codicil thereto attached, be not admitted to probate, but that the same be held for naught;" that upon a hearing the last will was held to be valid, and the same allowed to be probated; that from the order establishing the validity of the last will the plaintiff appealed to the circuit court, where the decision of the county court was affirmed; that thereafter proceedings were had in the county court by the executor, resulting in an order approving his final accounts, and directing that the funds in his hands be distributed as provided in the will; that thereupon, and prior to the commencement of this action, the said Subera, as executor, paid over to the respective legatees the amounts bequeathed to them, and was discharged as such executor; that the plaintiff had full notice of all the proceedings in the county court under the last will, and took part in the same, either personally or by his attorneys, and consented, by his attorneys, to the distribution of the estate as ordered by the court; that after the decision of the circuit court affirming the decision of the county court establishing the last will, the plaintiff made no further claim to the funds, either to the executor, legatees, or court, and repeatedly disclaimed all right to the same until after the estate had been fully settled and distributed, and it appeared from the evidence, and the court finds, that all the proceedings in the county court were regular and legal. The plaintiff having claimed these funds in controversy as residuary legatee and devisee under the former will, he in effect disclaimed any right to the funds as trust funds, and it appears by the evidence that he not only in effect claimed the fund under the former will as residuary legatee and devisee, but also, as before stated, disclaimed having any interest

in the same, and consented to the distribution of the estate in the manner provided in the last will. The following is the evidence of the witnesses upon the subject of estoppel in addition to the record evidence:

I. S. Jones, testifying as a witness in his own behalf in answer to the question, "You claim title to this land you have been testifying about. State how much money you ever put into the purchase of the land"—says: "A. There is receipt acknowledged in each and every deed. Q. Did you put $1 into the sale or purchase of either one of these tracts of land? A. The consideration cost me thousands of dollars. I mean by that the consideration was that I should abandon and not do any business, but hold myself in readiness there [state of Washington] to come here any time he called for me by wire or letter. I put money into the purchase of this land in that way. By the Court: Q. Were those deeds made to you as a gift? A. That was the intention; yes, sir." He was thereafter asked the following question: "I call your attention to the northwest quarter. * * * Did you pay any money for that conveyance to you? By the Court: I understand him to say that he did not pay any money for any of the conveyances." To the question, "Did you claim this property of which Wilson S. Jones died possessed by virtue of a will?" he answered: "I claimed it under a will and deeds both." He was also asked the following question: "There has been a letter introduced here marked 'Exhibit 21' written by you to Ralph Parliman. Mr. Jones, I will ask you whether or not these transactions that have been mentioned in the testimony and in the documentary evidence, wherein Wilson S. Jones acted as your attorney in fact under these powers of attorney, had all been settled and closed up before you took these powers of attorney home with you? A. Yes, sir." There is a conflict between the counsel as to the construction to be given this answer; the plaintiff's counsel contending that it relates only to the transactions between the deceased and the parties that he has been dealing with, while the defendants' counsel contend that it relates to the transactions between the plaintiff and the deceased; and the court seems to have taken this latter view of the evidence, as appears by the findings. We are

inclined to sustain the construction of the evidence given to it by the trial court, in view of the fact that the trial court heard the evidence, and in view of the fact that the powers of attorney were then taken up by the said Isaac S. Jones, and taken home to the state of Washington with him.

It is further disclosed by the evidence that, subsequently to the decease of W. S. Jones, in numerous conversations with different parties, Isaac S. Jones stated that he only claimed the home farm, which was a farm consisting of 240 acres formerly occupied by the deceased, and that he made no claim whatever to the personal property devised to Nellie B. Jones in the will.  Mr. R. W. Parliman, who acted as attorney for W. S. and I. S. Jones until differences arose between them in 1902, and who acted as attorney for Nellie B. Jones in the proceedings in the county court, testified that : "He [Isaac S. Jones] said that he wanted Nellie to have the bequests that had been given to her under the will of her uncle Wilson S. Jones, and that he was going to see that she got them.  But so far as the home farm was concerned, he proposed to have that himself; that that was his."

It further appears from the evidence that the deceased in his lifetime instituted an action against the present plaintiff to have the title of what is known as the home farm of the deceased decreed to him, on the ground that the deed made by him to Isaac S. Jones was a conveyance in trust or mortgage.  Judge Aikens had been employed by the plaintiff to defend that action, and while that suit was pending the said Wilson S. Jones died, and when proceedings were taken against Nellie B. Jones to compel her to turn over the securities in her hands to the executor, she applied to Judge Aikens to act as her attorney in connection with R. W. Parliman to defend her in these proceedings.  Judge Aikens declined to act as her attorney if her interest clashed with the interests of the plaintiff, and to settle this matter it was arranged there should be a meeting of the parties.  As a result of such arrangement, the plaintiff, Nellie B. Jones, and R. W. Parliman went together to the office of Judge Aikens, where the matters were all talked over.  Judge Aikens in regard to this interview testified as follows: "Q. You may state the conversation and the

circumstances surrounding it. A. In substance I asked him if he knew the nature of Nellie B. Jones' case, what she claimed her uncle had given her before his death, and he said he did. I told him, of course, I had a case for him in which an attack had been made upon his title to the real property, and wanted to know before I accepted any employment for Nellie B. Jones as to whether or not there could be any clashing of interests between him and her. I told him if there was, of course I did not want to place myself in an inconsistent position, and did not want to do anything unprofessional. He assured me at that time that she was his niece, and that he believed her claim was a just one, and that he made no claim that would antagonize matters at all; that I was at perfect liberty to accept employment for her, and to do all that I could, or words to that effect. I would not undertake to give exactly the conversation, but that is what Mr. Isaac Jones told me in effect. I asked him if there was any doubt in his mind as to whether or not there would ever be any clash between him and Nellie Jones, and he said 'No,' that the girl was entitled to anything she had, and that he would do all he could to protect her interests in that respect. With that understanding I told him I would go into the case with Mr. Parliman, and I did. He said he did not have any claims which would conflict with Nellie's; that he believed she was entitled to everything her uncle had given her. I inquired of the future as well as the present. That is the substance of what was said at that time." This conversation is in effect corroborated by both Nellie B. Jones and Mr. Parliman.

E. L. Smith also testified: "I am one of defendants. Have known plaintiff about five years. Was acquainted with W. S. Jones in his life time. Remember the time he died. * * * In a general way I had conversation with Isaac Jones with reference to the mortgages and that certificate of deposit that Nellie Jones had in her possession, turned over to her by Wilson S. Jones; that is, in regard to the property that he turned over to her. The first conversation I had with him was immediately after he returned, directly after the death of Wilson Jones. Isaac Jones said to me he was very much pleased in the way his brother Wil-

son had disposed of his personal property. He said his niece Nellie came there and took care of him when no one else would, and that she was entitled to it, and ought to have it, and that he would do all he could so that she might get it. He offered to go on any bonds with me that the court might require so she should be sure to get all this property that his brother had given her. * * * He mentioned a good many times about his desire to have her have the property his brother had given her." The witness further testified: "He repeatedly told me that all he claimed was the farm out there. He said he claimed it upon a deed. * * * All the claim he said he made to any of the property was that farm out west here. And he did not propose to have the proceeds of that used for a hospital, or have it used for a hospital."

The executor Subera was examined, and on his examination was asked the following question: "Q. You may state whether Isaac S. Jones, at any time during the administration of this estate and before it was closed, ever made any statement to you or claimed that the property being administered as the property of Wilson S. Jones was the property of Isaac S. Jones by virtue of a trust relation existing between him and his brother, and that the same was trust property. A No, sir. I heard the testimony of Isaac Jones relative to having a conversation with me at my office in the Minnehaha building. He did not state to me there that he claimed this property. He never made any such statements to me."

It will thus be seen that the plaintiff not only failed to give to the executor, legatees, or court any notice that he claimed the fund as a trust fund, but repeatedly disclaimed any right to the funds as a trust fund until after the proceedings in the county court under the last will were concluded. We are of the opinion, therefore, that the court was clearly right in holding that the plaintiff by his acts, conduct, and declarations is estopped from now claiming the proceeds as trust funds in this action.

In the case of Sutton et al. v. Con. Apex Min. Co. et al., 14 S. D. 33, 84 N. W. 211, this court adopted the rule in regard to estoppels as declared by the Supreme Court of the United

States in Dickerson v. Colgrove, 100 U. S. 578, 25 L. Ed. 618, as follows: "The vital principle is that he who by his language or conduct leads another to do what he would not otherwise have done shall not subject such persons to loss or injury by disappointing the expectations upon which he acted. Such a change of position is strictly forbidden."

It is contended by the appellant that it does not affirmatively appear that the conduct, acts, and declarations of the plaintiff prejudiced the defendants in this action, but this contention is clearly untenable. It is disclosed by the record that the defendant Subera proceeded under the orders of the court to distribute the estate, and that in pursuance thereof he paid over to the legatees the respective amounts bequeathed to them, and the estate was fully settled and closed at the time this action was instituted. It may be fairly presumed that, had the executor been advised of the claim of the plaintiff during the pendency of the proceedings, he would have retained the moneys in his hands until the claim of the plaintiff had been determined by an adjudication in the proper court, and to now hold him responsible for the moneys thus paid out by him under the order of the court would be manifestly unjust and inequitable. An equitable estoppel is properly and peculiarly a doctrine of equity originally introduced to prevent a party from taking a dishonest and unconscientious advantage of his strict legal rights. In an equitable estoppel the party is forbidden to set up his legal title, because he has so conducted himself that to do it would be contrary to equity and good conscience; as in this case the defendant Subera would be again compelled to pay the amounts that he had distributed to the legatees under the last will, and the other defendants would be compelled to pay over to the plaintiff the amounts received by them in good faith under the said will. Clearly such a result would be very prejudicial to all the defendants, and the claim on the part of the plaintiff that the fund constituted a trust fund cannot be sustained in a court of equity. Assuming, therefore, as before-stated, that the plaintiff had the legal right to the funds involved in this action, yet he, by his conduct, acts, and declarations, in equity and good conscience is estopped from now asserting the same. The

claim of the plaintiff in his petition, in contesting the last will of the deceased and seeking to establish the former will, was entirely inconsistent with his present contention that he now claims the same as trust funds, and his conduct throughout the proceedings for probating the last will, and his failure to make any claim to the property under that will, or to give notice to the court, executor, or legatees that he claimed the same, and his repeated statements to different parties in effect disclaiming any right to the funds, thus leaving the court, executor, and legatees to believe that he made no claim to the property as a trust fund until after the same was distributed by order of the court, and his acquiescence and consent in effect, through his attorneys, to the distribution of the estate, renders his claim at this time inequitable and unconscionable. No chancellor sitting in a court of equity would, in our opinion, permit a party to recover, in a case like the one at bar, against these defendants upon the evidence disclosed in this case.

On the trial of the case the plaintiff sought to prove that he was the owner of certain tracts of land in McCook county, which were sold by the deceased, W. S. Jones, in his lifetime, and the consideration for which had never been paid over to the plaintiff. It appears from the evidence, however, that these tracts of land stood in the name of W. S. Jones, and that he disposed of the same. When the plaintiff was upon the stand as a witness he was interrogated as to the ownership of these two tracts of land, and was asked the question whether or not these tracts of land had been conveyed to him by the deceased, and whether or not he had had in his possession deeds for the same. These questions were objected to on the ground that they tended to prove transactions between the plaintiff and the deceased, and that the evidence was incompetent under the provisions of subdivision 2, § 486, of the Revised Code of Civil Procedure. The court sustained the objection, and the evidence was excluded. We are of the opinion that the court was clearly right in its ruling.

It is contended by the appellant that the evidence sought to be elicited from the plaintiff that the deceased had executed deeds to him, and that they had been in his possession, but had not been recorded, was not within the provisions of the subdivision of the

section above referred to, for the reason that the action is not one "by or against executors, administrators, heirs at law or next of kin," but we are of the opinion that the court was clearly right in its ruling. This action was an action against the executor, and against legatees claiming under the will of the deceased. The contention of the appellant that this action is not against the executor as such, but is against him as an individual, is also clearly untenable. It is alleged in the complaint that such executor took possession of the personal property and held the same as such executor, caused an inventory of the estate of said W. S. Jones, deceased, to be made, filed, and proven in said court on or about November 28, 1902, and that the inventory, including real estate and personal property claimed to have been owned by said deceased, amounted to about $12,000. We are of the opinion, therefore, that there is no merit in the contention that the action was not against an executor, and are of the opinion that the evidence was properly excluded. We are further of the opinion that, if the court erred in excluding this evidence, and that the same should have been admitted, the error would not be one entitling the plaintiff to a reversal of the judgment in this case, as the findings of the court would still be based upon a sufficient failure of the evidence to show that the fund in controversy was a part of a trust fund.

A large number of errors are assigned, but plaintiff's counsel in their brief state: "That the three essential questions in this case are: First. Is the plaintiff the owner of the money and securities in question, proceeds from the sale and rental of his land? Second. Did such money and securities, or any part thereof, come into the possession of the defendants, and do they exercise dominion over the same adversely to plaintiff's interests? Third. If so, are the rights of the defendants thereto superior or inferior to the rights of the plaintiff?" The first two questions are clearly answered by the court's findings, first, that the claim of the plaintiff that he was the owner of the moneys and securities in question was not supported by the evidence; and, second, that the evidence failed to prove that any trust moneys came into the hands or possession of the defendants. These findings of the

court, which this court  pproves, clearly disposes of these two.
questions, and the third question is answered by the finding of the
court that the first two propositions were not proven, and also, if
they had been proven, that the defendants' rights by virtue of an
estoppel are paramount and superior to the rights of the plaintiff.
We do not deem it necessary to discuss the various errors as-
signed separately, as our decision virtually disposes of them.

At the conclusion of the trial the plaintiff presented to the
court, and requested it to find, certain facts in favor of the plain-
tiff; but we are of the opinion that, under the evidence, the court
was fully justified in refusing to find as requested.

Finding no error in the record, the judgment of the circuit
court is affirmed.