FRANK WOOLSEY and JAMES P. NORTHRUP, individually and as surviving executors, appellants,

v.

VIRGINIA M. WOOLSEY and ALICE WOOLSEY, respondents.

[Argued March 22d, 1907.    Decided November 18th, 1907.]

The orphans court, upon an executor's accounting, may ascertain the condition of the estate as fully as the court of chancery, and in the absence of fraud, or accident unmixed with negligence or fraud on the part. of the accountant, or of some matter of pure equity cognizance, the decree upon the accounting is conclusive upon the executor as to the propriety of allowances claimed by him.

On appeal from a decree of the court of chancery, advised by Vice-Chancellor Bergen, whose opinion is reported in *67 N. J. Eq. (1 Robb.) 574.*

Mr. *Robert H. McCarter*, attorney-general, and Mr. *James Buchanan* and Mr. *Charles L. Carrick*, for the appellants.

Mr. *Richard V. Lindabury* and Mr. *Randolph Perkins*, for the respondents.

The opinion of the court was delivered by

SWAYZE, J.

This is an appeal from a decree of the chancellor dismissing a bill for an injunction to restrain the enforcement of a decree entered in the Hudson orphans court pursuant to the mandate of this court.   Our former opinion is reported in *68 N. J. Eq. (2 Robb.) 763.*   The ground on which relief is sought is an alleged family arrangement by which one of the legatees and one having a life estate in a trust fund created by the will are said to have agreed with the executors to vary the order and priority of payment of legacies, and to accept by way of annuities to themselves partial payments of the principal of the legacy

and trust fund. The vice-chancellor held that the matter was *res adjudicata,* and that he was therefore bound by our former decree.

To sustain this defence it must appear that the identical matter was involved. *Water Commissioners* v. *Cramer, 61 N. J. Law (32 Vr.) 270, 273; Cromwell* v. *Sac County, 94 U. S. 351.* The issue in the orphans court was presented in the form of exceptions to certain allowances claimed by the executors. All were in the following form: That the sum claimed to have been paid on annuity account was not in fact paid by said executors, and said item is improperly credited to said executors, and allowance thereof should not be made.

The point made is that this exception questions only the fact of payment, and not the propriety of the allowance claimed by the executors. We cannot concur in this view. The very last words of the exceptions challenge the propriety of the allowance, and the executors did not at the hearing before the master assert that they were not apprised of any reason for the exception other than the bare denial of payment. Upon the contrary, in their testimony they sought to justify the allowances claimed, and did not confine themselves to proving the fact of payment. It was manifestly necessary for them to do so since the burden was on them to prove the propriety of the allowances (*Kirby* v. *Coles, 15 N. J. Law (3 Gr.) 441*), and the claim of payments on account of annuities as credits against the *corpus* of the estate necessarily arrested attention. The objection was distinctly stated in the master's report, and when the present complainants excepted to that report they in so many words affirmed that the amount was justly and properly paid by the executors under the terms of the will, and should have been allowed by the master. The very form of these exceptions by the accountants themselves presented to the orphans court the question of the justice and propriety of the allowances which the accountants were bound to establish.

The issue now presented is the same. The only difference is in the evidence adduced to sustain it on the part of the accountants. In the present litigation they set forth with a little more distinctness and care the alleged family arrangement, in which.

however, only two of the legatees joined, and one of those a mere life tenant.

Since the issues in the litigations are identical, the only remaining question is whether the orphans court had jurisdiction to pass upon the attempted justification by the executors of their payments of annuities out of *corpus.*

By the statute power is conferred on the orphans court to hear and determine all controversies respecting the allowance of the accounts of executors, administrators, guardians or trustees (*P. L. 1898 p. 715 § 2*), and the section providing for exceptions authorizes the court to examine the accountant touching the truth and fairness of the same. The broad language in which the jurisdiction is conferred, and the authority to examine as to the fairness of the account, authorizes the orphans court to deal with the account on equitable principles, and we have held that the orphans court on such accounting may ascertain the condition of the estate as fully as can the court of chancery (*Pyatt v. Pyatt, 46 N. J. Eq. (1 Dick.) 285, 288*), that case decided that the powers of the court are sufficiently broad to justify it in allowing a guardian credit for payments for the support of his ward after the latter's majority. This result was reached upon a consideration of the powers exercised by the English court of chancery and the New York courts under legislation similar to ours. The court of appeals in New York determined the bounds of the jurisdiction of the surrogate upon an administrator's accounting by reference to the jurisdiction of the courts of equity, and Judge Andrews said: "The surrogate's court is a court of limited powers and jurisdiction, but it has jurisdiction to determine questions either legal or equitable arising in the course of proceedings in the execution of powers expressly conferred, and which must be decided therein." *Hyland v. Baxter, 98 N. Y. 611.* It was there held that the determination of the surrogate, on settlement of an administrator's accounts, denying a claim for advance for support and maintenance of a minor entitled to a share in the estate was *res adjudicata,* conclusive in an action subsequently brought by the administrator therefor.

In this state the orphans court and the court of chancery have a concurrent jurisdiction in matters of this nature, and it is

only where there are special reasons for going into equity that that course is justified. *Salter* v. *Williamson, Administrator, 2 N. J. Eq. (1 Gr. Ch.) 480.*

In the present case there is no matter of peculiarly equitable cognizance which requires the action of the court of chancery. There can, of course, be no question that the accountants, upon a proper statement of their account, were entitled to credit for the payments actually made. What we decided—*68 N. J. Eq. (2 Robb.) 763* (at *p. 767*)—was that, by reason of the payments having been made on account of annuities, the accountants were estopped to deny the receipt of income out of which to make the payments, and as they failed to charge themselves with such receipts, they could not be allowed for the payments. It was open for them in the orphans court to show that the payments were made and received on account of *corpus* and ought therefore to be allowed as credits against the *corpus*. There is nothing in the alleged agreement by Mrs. and Miss Woolsey which prevented the orphans court from dealing with the matter as fully as the court of chancery. The items would not, to be sure, be proper credits as against non-assenting legatees, but that question did not arise. In *Birkholm* v. *Wardell, 42 N. J. Eq. (15 Stew.) 337*, the ordinary held that, even where improper payments had been made, they should be allowed as between the parties, and in the recent case of *Wyckoff* v. *O'Neill, 71 N. J. Eq. (1 Buch.) 729*, we have held that payments on account of collateral inheritance taxes should be allowed, although they were chargeable to some only of the legatees and in varying amounts. So in this case, if the agreement had been proved, the respondents could not have been heard to object to an allowance to the executors therefor, and upon a distribution the respective amounts paid to each would have been deducted from their several shares.

Our former decree was based on the equitable estoppel arising out of the facts of the case. A court which was competent to determine a question of equitable estoppel, as we have held the orphans court to be in this case, was certainly competent to hear and determine facts which would prevent the estoppel from operating. There is in this case no ground of equity other than

the estoppel itself, and the parties entitled to its benefit may make it available even in a court of law. *Dickerson* v. *Colgrove, 100 U. S. 578; Drexel* v. *Berney, 122 U. S. 241; Van Marter* v. *Lucas, 64 N. J. Law (35 Vr.) 182; affirmed, 65 N. J. Law (36 Vr.) 311.* Other cases are cited in *Central Railroad* v. *Mac-Cartney, 68 N. J. Law (39 Vr.) 165, 175,* and in *16 Cyc. 725, notes 1, 2.*

There is a further reason why in this case relief should be denied complainants. They themselves sought to account in the orphans court when the court of chancery was open to them, and they have themselves obscured the issue, if it can be said to have been obscured, by claiming allowance for payments on account of annuities without charging themselves with any receipts applicable to the payments, and have caused this second litigation by their failure to prove the alleged agreement in the orphans court. Having thus, by acts of omission and commission, led to the result of which they complain, they ought not to be allowed to set it aside. To permit that would amount to permitting suitors to experiment with the court, and if defeated in one court to resort to another. The principle upon which courts of equity intervene by way of injunction to restrain judgments in courts of law are applicable to a suit to restrain the enforcement of a decree of the orphans court. Those principles are thus stated in *Mechanics' National Bank* v. *Burnet Manufacturing Co., 33 N. J. Eq. (6 Stew.) 486* (at *p. 488*), and affirmed on the vice-chancellor's opinion (*35 N. J. Eq. (8 Stew.) 344*):
"Courts of equity sometimes give relief against judgments at law, but only where it is shown that the defendant was ignorant of the facts on which his defence rests until after the time for making defence at law had passed, or that he was prevented from making defence by the artifice or fraud of his adversary, or by accident unmixed with negligence or fraud on his part, or that his defence is a matter of pure equity cognizance. But in cases where the grievance he attempts to urge is one that the court which pronounced the judgment is competent to hear and decide, and he has either urged it there unsuccessfully, or has negligently omitted to do so, this court can give no relief."

In *Phillips* v. *Pullen, 45 N. J. Eq. (18 Stew.) 830,* where a

question of fraud was raised, this court said: "In so far as this contention rests upon fraud in the procurement of the written contract, it is no longer an open question. That was one of the issues directly involved in the suit at law. If true, there could have been no recovery. The thing to be proved and the *quantum* of proof do not differ in the two jurisdictions," and it was held to be *res judicata* that the agreement was not the product of fraud. In *Ruckelschaus* v. *Oehme, 48 N. J. Eq. (3 Dick.) 436* (on appeal under the name of *Borcherling* v. *Ruckelschaus, 49 N. J. Eq. (4 Dick.) 340*), the jurisdiction of chancery was sustained only because the court of law overruled the defence of equitable estoppel, and it was held that the defendant had the option either to test the accuracy of that ruling by a writ of error or to accept it as the law of the case and present his defence to the court of chancery as one not cognizable by a court of law. The learned vice-chancellor had said (*48 N. J. Eq. (3 Dick.) 445*) that it was not for his adversary, on whose motion the defence at law had been excluded, to say that the ruling of the trial court was wrong and should have been tested by a writ of error. This court said that if he had taken a writ of error he would be undoubtedly estopped from litigating the same question anew in another court. Such is exactly the position here. The appellants presented the question to the orphans court by exceptions to the master's report, and, having been defeated, appealed to the prerogative court, and the decree of that court was brought to this court, with a result adverse to the accountants.

We think the vice-chancellor was right in holding that the matter was *res judicata,* and that it is unnecessary to consider whether the alleged agreement has been proved, or, if proved, would have the effect for which the appellants contend.

The decree should be affirmed, with costs.

*For affirmance*—THE CHIEF-JUSTICE, GARRISON, HENDRICKSON, PITNEY, SWAYZE, REED, TRENCHARD, BOGERT, VREDENBURGH, VROOM, GREEN, GRAY, DILL—13.

*For reversal*—None.